UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

PEARSON EDUCATION, INC.,                    :
JOHN WILEY & SONS, INC.,
CENGAGE LEARNING, INC. AND                  :
THE MCGRAW-HILL COMPANIES, INC.,
                                            :
                        Plaintiffs,
                                            :
        -against-                               11 Civ. 5052 (PAE)
                                            :
LAZAR ISHAYEV AND YELENA LEYKINA                ECF Case
BOTH D/B/A SOLUTIONS DIRECT D/B/A           :
SOLUTIONS4LESS D/B/A
TEXTBOOKANSWERS D/B/A                        :
SOLUTIONMANUALS-TESTBANKS.COM AND
JOHN DOE NOS. 1-5,                          :

                        Defendants. :

- - - - - - - - - - - - - - - - - - -x

        MEMORANDUM OF PLAINTIFFS IN SUPPORT OF THEIR MOTION
         FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO
        DEFENDANT LAZAR ISHAYEV'S MOTION FOR SUMMARY JUDGMENT




                        DUNNEGAN & SCILEPPI LLC
                        Attorneys for Plaintiffs
                          Pearson Education, Inc.,
                          John Wiley & Sons, Inc.,
                          Cengage Learning, Inc., and
                          The McGraw-Hill Companies, Inc.
                        350 Fifth Avenue
                        New York, New York 10118
                        (212) 332-8300

Table of Contents

Preliminary Statement . . . . . . . . . . . . . . . . . . . . 4

Statement of Fact . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    I.   THE PUBLISHERS OWN VALID COPYRIGHTS
        IN THEIR 59 TEXTBOOKS. . . . . . . . . . . . . . . .7

    II.  DEFENDANTS INFRINGED SIX OF THE PUBLISHERS'
        COPYRIGHTS THROUGH THE REPRODUCTION AND SALE
        OF COPIES OF DERIVATIVE WORKS KNOWN AS
        INSTRUCTORS' SOLUTIONS MANUALS. . . . . . . . . . 9

        A.   As The Copyright Owner, The Publishers Have
             The Exclusive Right To Create
             Derivative Works. . . . . . . . . . . . . . .9

        B.   Instructors' Solutions Manuals Are
             Derivative Works Of The Underlying Textbooks. .11

        C.   Defendants Infringed Six Copyrights Of
             The Publishers By Reproducing And Selling
             Copies Of The Instructors' Solutions Manuals. .12

    III. THE COURT SHOULD ENJOIN DEFENDANTS FROM
        FURTHER ACTS OF COPYRIGHT INFRINGEMENT . . . . . .14

    IV.  THERE IS AT LEAST A QUESTION OF FACT AS
        TO DEFENDANTS' INFRINGEMENT OF THE REMAINING
        53 COPYRIGHTS. . . . . . . . . . . . . . . . . . .16

    V.   THE COURT SHOULD GRANT THE PUBLISHERS SUMMARY
        JUDGMENT ON ISHAYEV'S COUNTERCLAIM . . . . . . . .17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . .19

<u>Table of Authorities</u>

<u>Cases</u>

<u>Addison-Wesley Publ'g Co.</u>,
223 F. Supp. 219 (E.D.N.Y. 1963). . . . . . . . . . . . . . .11

<u>Campbell v. Acuff-Rose Music, Inc.</u>,
510 U.S. 569, 114 S. Ct. 1164, 127 L.Ed.2d. 500 (1994). . . . .10

<u>Castle Rock Ent., Inc. v. Carol Publishing Group, Inc.</u>,
150 F.3d 132 (2d Cir. 1998). . . . . . . . . . . . . . . . . 9

<u>Celle v. Filipino Reporter Enterprises Inc.</u>,
209 F.3d 163 (2d Cir. 2000). . . . . . . . . . . . . . . . 17

<u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>,
499 U.S. 340, 111 S. Ct. 1282 (1991). . . . . . . . . . . . .6

<u>Grasso v. Mathew</u>,
164 A.D.2d 476, 564 N.Y.S.2d 576 (1991) . . . . . . . . . . 18

<u>Kforce, Inc. v. Alden Pers., Inc.</u>,
288 F. Supp.2d 513 (S.D.N.Y. 2003) . . . . . . . . . . . . 18

<u>Pavlica v. Behr</u>,
2006 WL 1596763 (S.D.N.Y. June 12, 2006). . . . . . . . . . .11,12

<u>Pearson Educ., Inc. v. Nugroho</u>,
2009 WL 3429610 (S.D.N.Y. Oct. 27, 2009),
<u>report and recommendation adopted</u>, 2009 WL 4884098
(S.D.N.Y. Dec. 16, 2009). . . . . . . . . . . . . . . . . . .passim

<u>Pearson Educ., Inc. v. Vergara</u>,
2010 WL 3744033 (S.D.N.Y. Sept. 27, 2010)
<u>report and recommendation adopted</u>,
09 Civ. 6832 (JKG)(KNF)(May 5, 2011)(Doc. No. 21) . . . . . . .passim

<u>Reed Elsevier, Inc. v. Muchnick</u>,
130 S. Ct. 1237, 176 L.ED.2d 18 (2010). . . . . . . . . . . .7

Statutes

17 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . 11

17 U.S.C. § 106. . . . . . . . . . . . . . . . . . . 5,6,9

17 U.S.C. § 410(c) . . . . . . . . . . . . . . . . . . 8

17 U.S.C. § 411. . . . . . . . . . . . . . . . . . . . 8

17 U.S.C. § 502(a) . . . . . . . . . . . . . . . . . . 14

Plaintiffs Pearson Education, Inc. ("Pearson"), John Wiley & Sons, Inc. ("Wiley"), Cengage Learning, Inc. ("Cengage") and The McGraw-Hill Companies, Inc. ("McGraw-Hill") (collectively, the "Publishers") respectfully submit this memorandum in opposition to the motion of defendant Lazar Ishayev ("Ishayev") for summary judgment and in support of their motion for partial summary judgment against defendants Ishayev and Yelena Leykina ("Leykina")(jointly, "Defendants") (i) on the issue of the ownership and validity of 59 of the Publishers' copyrights, (ii) on the issue of the infringement by Defendants of six of those 59 copyrights, (iii) for an injunction enjoining Defendants against further infringement of the six copyrights, and (iv) dismissing Ishayev's counterclaim with prejudice.

<u>Preliminary Statement</u>

The Publishers are among the world's leading publishers of educational textbooks.  Defendants are prolific copyright infringers, selling copies of the Publishers' instructors' solutions manuals that assist students in cheating their way through college.

There is no genuine dispute that the Publishers own valid and enforceable copyrights in the 59 textbooks involved in this motion.  Nor is there a genuine dispute that Defendants infringed six of those copyrights by selling derivative works,

specifically, electronic copies of the Publishers' instructors' solutions manuals.

The Publishers' legal theory is as follows.  The Publishers own the registered copyrights in their textbooks and publish instructors' solutions manuals as a supplement to those textbooks.  The instructors' solutions manuals contain the answers to the problems in the textbooks.  In copyright parlance, the instructors' solutions manuals are derivative works of the textbooks because their economic value depends on the underlying works, the textbooks.  17 U.S.C. § 106(2) grants copyright owners the exclusive right to make derivative works.  By selling copies of the Publishers' instructors' solutions manuals, Defendants therefore infringed the Publishers' copyrights in their textbooks.

This is the same theory that the Court adopted in Pearson Educ., Inc. v. Nugroho, 2009 WL 3429610 (S.D.N.Y. Oct. 27, 2009), report and recommendation adopted, 2009 WL 4884098 (S.D.N.Y. Dec. 16, 2009).  The Publishers' legal theory should again succeed.

On this motion, the Publishers are seeking summary judgment for liability on only six of the works that Defendants sold.  There is at least a question of fact as to (i) whether Defendants reproduced or sold the instructors' solutions manuals for the Publishers' remaining 53 of the 59 copyrighted textbooks

5

involved in this action, and (ii) the amount of damages that the Publishers should be entitled to recover.

Therefore, the Publishers seek an order (i) granting summary judgment on the validity of 59 of their copyrights, (ii) granting summary judgment on the infringement of six of those 59 copyrights, (iii) permanently enjoining Defendants from further infringing six of the Publishers' copyrights, (iv) denying Ishayev's motion for summary judgment in its entirety, and (v) granting the Publishers summary judgment on Ishayev's counterclaim.

<u>Statement of Facts</u>

The relevant facts are set forth in the Publishers' statement pursuant to Rule 56.1 of the Civil Rules of the Court, and will not be repeated.

<u>Argument</u>

A claim for copyright infringement has two elements: a valid copyright and unlawful copying. <u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.") "The word 'copying' in the second element 'is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106.'" <u>Pearson Educ., Inc. v.</u>

Vergara, 2010 WL 3744033 (S.D.N.Y. Sept. 27, 2010) report and
recommendation adopted, 09 Civ. 6832 (JKG)(KNF)(May 5,
2011)(Doc. No. 21), quoting Arista Records LLC v. Doe 3, 604
F.3d 110, 117 (2d Cir. 2010) (internal quotation marks and
citation omitted).  In addition, for United States works, a
plaintiff must establish that the copyright is registered. Reed
Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 176 L.ED.2d 18
(2010).

## I.

### THE PUBLISHERS OWN VALID COPYRIGHTS IN THEIR 59 TEXTBOOKS

No one could reasonably dispute that the Publishers
own valid copyrights in the 59 textbooks that are the subject of
this action.

Pearson owns the copyright in the 25 textbooks
identified in paragraph three of the Morris Declaration.  Wiley
owns the copyright in the 19 textbooks identified in paragraph
three of the Murphy Declaration.  Cengage owns the copyright in
the ten textbooks identified in paragraph three of the Stitt
Declaration.  McGraw-Hill owns the copyright in the five
textbooks identified in paragraph three of the Beacher
Declaration.  Pearson, Wiley, Cengage and McGraw-Hill have
registered each of these works. (Morris Dec. Ex. A; Murphy Dec.
Ex. B; Stitt Dec. Ex. C; Beacher Dec. Ex. D).

These certificates of registration satisfy the requirement of 17 U.S.C. § 411 and create a prima facie case that the copyrights are valid and that the copyright claimant identified in the certificate owns them.  17 U.S.C. § 410(c) provides:

> "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

For each certificate, the Publishers themselves are the copyright claimants on the certificate or can demonstrate a chain of title from the copyright claimant. (Morris Dec. Ex. A; Murphy Dec. Ex. B; Stitt Dec. ¶ 4, Ex. C; Beacher Dec. Ex. D).

Defendants have not produced any evidence that the Publishers do not own valid copyrights in their 59 textbooks.

Accordingly, the Publishers have established the first element of their claim for copyright infringement and are entitled to summary judgment on the validity and ownership of their 59 copyrights.

II.

DEFENDANTS INFRINGED SIX OF THE PUBLISHERS'
COPYRIGHTS THROUGH THE REPRODUCTION AND SALE
OF COPIES OF DERIVATIVE WORKS KNOWN AS
INSTRUCTORS' SOLUTIONS MANUALS

There can be no reasonable dispute that Defendants'
reproduction and sale of unauthorized copies of the Publishers'
instructors' solutions manuals infringed six of the Publishers'
copyrights in their textbooks because (a) the Publishers have
the exclusive right to create derivative works of their
textbooks, (b) the Publishers' instructors' solutions manuals
are derivative works of their textbooks, and (c) the evidence
overwhelmingly demonstrates that Defendants reproduced and sold
unauthorized copies of the Publishers' instructors solutions
manuals.

A.       As The Copyright Owner, The Publishers Have
         The Exclusive Right To Create Derivative Works.

17 U.S.C. § 106 provides in applicable part:

"Subject to sections 107 through 122, the owner of
copyright under this title has the exclusive rights to
do and to authorize any of the following:. . . .

(2)  To prepare derivative works based upon the
copyrighted work;"

Castle Rock Ent., Inc. v. Carol Publishing Group,
Inc., 150 F.3d 132 (2d Cir. 1998), is instructive.  There, the
Court of Appeals found that defendant's trivia book based on
plaintiff's Seinfeld television series infringed the copyright

in the television series.  Id. at 146.  It reasoned that the
trivia book "substitutes for a derivative market that a
television program copyright owner such as Castle Rock 'would in
general develop or license others to develop.'" Id. at 145,
quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 592,
114 S. Ct. 1164, 1178, 127 L.Ed.2d. 500 (1994), cited by Pearson
Educ., Inc. v. Nugroho, 2009 WL 3429610 (S.D.N.Y. Oct. 27, 2009)
report and recommendation adopted, 2009 WL 4884098 (S.D.N.Y.
Dec. 16, 2009). See Pearson Educ., Inc. v. Vergara, 2010 WL
3744033 at *3 (S.D.N.Y. Sept. 27, 2010), report and
recommendation adopted, 09 Civ. 6832 (JKG)(KNF) (May 5, 2011)
(Doc. No. 21) ("Although the ISMs may not be registered
copyrights, given that a derivative work by definition consists
of matter that would be infringing if it had been derived from
the pre-existing work without the copyright proprieter's [sic]
consent, it follows analytically that the owner of a registered
underlying work, in that capacity alone, should be able to
maintain a suit for unauthorized reproduction of an unregistered
derivative work.  Hence, by reproducing and selling unauthorized
copies of the plaintiffs' ISMs, Vergara infringed, at least, the
plaintiffs' exclusive right to prepare derivative works to their
registered copyrights.") (internal quotation marks and citation
omitted).

B.          Instructors' Solutions Manuals Are
            <u>Derivative Works Of The Underlying Textbooks.</u>

17 U.S.C. § 101 defines "derivative work" as follows.

"A 'derivative work' is a work based upon one or more
preexisting works, such as a translation, musical
arrangement, dramatization, fictionalization, motion
picture version, sound recording, art reproduction,
abridgment, condensation, or any other form in which a
work may be recast, transformed, or adapted. A work
consisting of editorial revisions, annotations,
elaborations, or other modifications which, as a
whole, represent an original work of authorship, is a
'derivative work.'"

A work is "based upon" a preexisting work if it relies

on the preexisting work for its economic value.  <u>Nugroho</u>, 2009

WL 3429610 at *5 ("Here, as in <u>Pavlica</u> [2006 WL 1596763 (S.D.N.Y

June 12, 2006)] and <u>Addison-Wesley Publ'g Co.</u> [223 F. Supp. 219

(E.D.N.Y. 1963)], Nugroho's instructors' solutions manuals

complement plaintiffs' copyrighted textbooks, have no

'independent economic value' and are 'meaningless' without the

textbooks because they merely provide answers to questions posed

in the textbooks.  Accordingly, this Court holds that Nugroho's

instructor's solutions manuals are derivative works that

infringe upon plaintiffs' textbook copyrights"); <u>Pavlica v.</u>

<u>Behr</u>, 2006 WL 1596763 at *3 (S.D.N.Y June 12, 2006)("[T]he

Addendum, and the Schedule do not 'live their own copyright

life.' They do not have independent economic value, and they are

not by themselves economically viable.  The Schedule is by

11

nature derivative and it is meaningless without the Manual. . .
Similarly, the Addendum is by nature derivative, as it merely
provides additional samples of papers written by students and a
booklet prepared for a science symposium, to be used with the
Manual."); See Also Pearson Educ., Inc. v. Vergara, 2010 WL
3744033 at *3 ("The Court finds that the plaintiffs' ISMs, which
provide professors solutions to aid them in grading homework
assignments from the plaintiffs' textbooks, are derivative works
warranting copyright protection.").

     The Publishers' instructors' solutions manuals provide
answers to questions contained in the textbooks and rely on the
underlying textbooks for their economic value. (Morris Dec.
¶¶ 4, 5; Murphy Dec. ¶¶ 4, 5; Stitt Dec. ¶¶ 5, 6; Beacher Dec.
¶¶ 4, 5)  Thus, as in Nugroho, Vergara, and Pavlica, the
Publishers' instructors' solutions manuals are derivative works
because they have economic value only when used with the
corresponding textbook.

C.      Defendants Infringed Six Copyrights Of
       The Publishers By Reproducing And Selling
       Copies Of The Instructors' Solutions Manuals.

     There can be no reasonable dispute that Defendants
reproduced and sold six of the Publishers' instructors'
solutions manuals.  Jennifer Siewert purchased three of the
Publishers' instructors' solutions manuals from the seller named
"Lazar Ishayev" at the e-mail addresses lazarfb@gmail.com and

solutions4less@optimum.net, and paid for these instructors'
solutions manuals through PayPal, Inc. ("PayPal"). (Siewert Dec.
¶¶ 2-15)

Ishayev admits that he used the e-mail address
lazarfb@gmail.com and that he "may" have used the e-mail address
solutions4less@optimum.net. (Scileppi Dec. Ex. X at 46:23-47:19,
80:12-19) Ishayev also admits that he operated a PayPal account
associated with the e-mail address lazarfb@gmail.com and
associated with his bank accounts at Astoria Federal Savings
Bank and TD Bank. (Scileppi Dec. Ex. X at 83:22-25, 94:5-20, Ex.
AC)  Ishayev admits that he "may" have sold "links" to
instructors' solutions manuals and that he used his PayPal
account to complete transactions "related" to instructors'
solutions manuals. (Scileppi Dec. Ex. X at 44:15-45:6, 83:22-25)

Ms. Siewert also purchased three instructors'
solutions manuals from the seller named "Yelena Leykina" at the
e-mail address solutions4all@optimum.net, and paid for these
instructors' solutions manuals through PayPal.  Leykina admits
that the PayPal account in her name is associated with her date
of birth, social security number and physical address (Scileppi
Dec. Ex. Y at 46:7-53:15, Ex. AD)  Further, Leykina's bank
statement, for the bank account associated with the PayPal
account in her name, shows numerous deposits from PayPal.
(Scileppi Dec. Exs. AD, AF)

In addition to the purchase made by Ms. Siewert, Defendants' PayPal Transaction Logs also demonstrate that Defendants sold the five of the six instructors' solutions manuals to individuals other than Ms. Siewert. (Scileppi Dec. Ex. AB)

Defendants have known each other for over ten years and have been in a romantic relationship for over five years. (Scileppi Dec. Ex. Y at 39:3-11, Ex. X at 22:11-19)  As stated above, both Defendants' PayPal accounts and bank accounts received funds from the sale of the Publishers' instructors' solutions manuals.

A jury could not reasonably find that Defendants did not work together to sell the six instructors' solutions manuals.  Therefore, the Publishers are entitled to summary judgment on the issue of liability against both Defendants for the infringement of six of their copyrights.

III.

THE COURT SHOULD ENJOIN DEFENDANTS FROM
FURTHER ACTS OF COPYRIGHT INFRINGEMENT

The Publishers should be entitled as a matter of course to a permanent injunction restraining further acts of copyright infringement of the Publishers' six copyrights.  17 U.S.C. § 502(a) provides:

"Any court having jurisdiction of a civil action arising under this title may, subject to the provisions

of section 1948 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

As discussed above, on or about September 22, 2010, March 9, 2011, and June 30, 2011, Ms. Siewert purchased instructors' solutions manuals from the seller named "Lazar Ishayev" at the e-mail addresses lazarfb@gmail.com and solutions4less@optimum.net. (Siewert Dec. ¶¶ 2-16)  The Publishers filed this action on July 22, 2011, and served Ishayev on August 26, 2011.

Thereafter, on or about October 27, 2011, Ms. Siewert purchased three instructors' solutions manuals from the seller named "Yelena Leykina" at the e-mail address solutions4all@optimum.net. (Siewert Dec. ¶¶ 18-23)  This e-mail address is associated with a different PayPal account than that used in Ms. Siewert's prior purchases.  Therefore, the Defendants continued to sell the Publishers instructors' solutions manuals, even after the Publishers filed this action and served Ishayev.  Unless enjoined, Defendants are likely to continue selling instructors' solutions manuals by using different PayPal accounts and e-mail addresses, as they previously did.  It would serve no purpose to allow Defendants to continue their infringing acts.

IV.

THERE IS AT LEAST A QUESTION OF FACT AS
TO DEFENDANTS' INFRINGEMENT OF THE
REMAINING 53 COPYRIGHTS

The Court should deny Ishayev's motion for summary judgment because there is at least a question of fact as to Defendants' infringement of the remaining 53 copyrights in this case.  The website that Defendants used to sell instructors' solutions manuals, solutionmanuals-testbanks.blogspot.com, listed approximately 340 test banks and instructors' solutions manuals for sale and told purchasers to contact the e-mail address solutions4less@optimum.net to purchase them. (Scileppi Dec. Ex. Z)  A reasonable juror could conclude that Defendants had made copies of those instructors' solutions manuals on their computers before offering them for sale.  Further, the PayPal transaction logs for the Defendants' PayPal accounts used in the infringing sales made to Ms. Siewert contain a large number of transactions for which there is no description or a generalized description of what was sold. (Scileppi Dec. ¶ 13, Ex. AE) Therefore, a reasonable juror could conclude that those transactions were sales of the Publishers' instructors' solutions manuals.

V.

THE COURT SHOULD GRANT THE PUBLISHERS SUMMARY
JUDGMENT ON ISHAYEV'S COUNTERCLAIM

Ishayev alleged in his answer to the amended complaint and counterclaim that:

> "The Plaintiffs cause, and continue to cause, aspersions on the Defendant's, [sic] character and reputation; hindered and continues to hinder his career and professional opportunities; Severely damages and continue to damage present and future earning capability [sic]; caused and continues to cause potential employers to stop calling, rescind job offers or otherwise negatively impact his professional profile as a result of the unsubstantiated allegations, which are public records, and with the present-day availability of internet search technologies (i.e. Google) contribute greatly to damaging his professional reputation, present and future employment opportunities and present and future earning capability.  We rely upon information about people to help us assess their reputations.  The rapid spread of information on the Internet, especially if such information is false and unfounded, irreparably damages the Defendants [sic] professional and personal reputation."

The Publishers will treat Ishayev's claim as a claim for libel.  Under New York law, a claim for libel has five elements: "1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face)." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 176 (2d Cir. 2000).

The only statement Ishayev alleges is libelous is the Publishers' complaint and amended complaint (Scileppi Dec. Ex. X at 140:16-142:19)  However, a complaint, pled in good faith cannot be the basis for a claim for libel. Grasso v. Mathew, 164 A.D.2d 476, 479, 564 N.Y.S.2d 576 (1991)("In the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation.").

Ishayev has not produced, and has no evidence that, (i) the Publishers acted with actual negligence or malice, or (ii) the Publishers' claim for copyright infringement constitutes a false statement. (Scileppi Dec. Ex. X at 139:10-140:4)  To the contrary, as stated in Point II above, the Publishers have shown that, as the Publishers alleged, Ishayev infringed at least six copyrights of the Publishers by selling unauthorized copies of instructors' solutions manuals.

Further, Ishayev has not pled, and cannot prove, that he has suffered special harm.  Ishayev testified that his only evidence in support of the element of special damages is (i) one conversation with an unidentified potential employer who discovered the complaint in this action and informed Ishayev, in substance, that having an action filed against him would harm his employment opportunities, and (ii) Ishayev's own observation regarding the frequency of his employment opportunities.

(Scileppi Dec. Ex. ¶¶ 139-141)  Neither of these rises to the level of special damages.

Additionally, Ishayev has also not pled, and cannot prove, that the Publishers' claims against him constitute defamation per se. "Defamation per se has been defined both as statements that cast doubt on a particular quality at the very heart of a profession and statements that impugn the basic integrity of a business." Kforce, Inc. v. Alden Pers., Inc., 288 F. Supp.2d 513, 516 (S.D.N.Y. 2003).  By filing a good faith action against Ishayev for copyright infringement, the Publishers did not make statements about Ishayev's business or on the quality of his profession beyond his infringing activity. Therefore, the Publishers' claims against Ishayev do not rise to the level of defamation per se.

## Conclusion

For the reasons set forth above, the Publishers respectfully request that the Court grant their motion for partial summary judgment (i) on the issue of the ownership and validity of 59 the Publishers' copyrights, (ii) on the issue of liability for Defendants' infringement of six of those 59 copyrights, (iii) enjoining Defendants from further infringement of those six copyrights, (iv) granting the Publishers summary judgment on Ishayev's claim for libel, and

(v) denying Ishayev's summary judgment motion in its entirety.

Dated: New York, New York
       December 17, 2012

                        DUNNEGAN & SCILEPPI LLC


                        By s/Laura Scileppi
                          Laura Scileppi (LS0114)
                          ls@dunnegan.com
                          Samantha Morrissey (SM1210)
                          sm@dunnegan.com
                        Attorneys for Plaintiffs
                          Pearson Education, Inc.,
                          John Wiley & Sons, Inc.,
                          Cengage Learning, Inc. and
                          The McGraw-Hill Companies, Inc.
                        350 Fifth Avenue
                        New York, New York 10118
                        (212) 332-8300