UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :

PEARSON EDUCATION, INC. et al.,              :

                                  :

                         Plaintiffs,      :           11 Civ. 5052 (PAE)

                                  :

                -v-                :           <u>OPINION & ORDER</u>

                                  :

LAZAR ISHAYEV and YELENA LEYKINA, *both d/b/a* :
*Solutions Direct d/b/a Solutions4Less d/b/a*      :
*TextbookAnswers d/b/a SolutionManuals-Testbanks.com*, :
and JOHN DOES 1–5,                          :

                                  :

                       Defendants.     :

                                  :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs Pearson Education, Inc. ("Pearson"), John Wiley & Sons, Inc. ("Wiley"),

Cengage Learning, Inc. ("Cengage"), and The McGraw-Hill Companies, Inc. ("McGraw-Hill")[1]

bring claims of copyright infringement against *pro se* defendants Lazar Ishayev and Yelena

Leykina, allegedly together doing business as "Solutions Direct," "Solutions4Less,"

"TextbookAnswers," and/or "SolutionManuals-Testbanks.com" (collectively, "defendants").[2]

Plaintiffs allege that Ishayev and Leykina violated the Copyright Act, 17 U.S.C. §§ 501 *et seq.*,

and willfully infringed their copyrights, by selling unauthorized copies of instructors' solutions

manuals over the internet.  Plaintiffs seek to preliminarily and permanently enjoin defendants

and their agents from selling the manuals.  Plaintiffs also seek damages sustained as a result of

the defendants' conduct, including defendants' profits, plaintiffs' damages, or statutory damages,

---

[1] All four are collectively referred to as "plaintiffs," unless otherwise noted.

[2] Plaintiffs also initially sued "John Does Nos. 1–5."  Because discovery has ended and plaintiffs
have not sought to amend their complaint or identify the John Doe defendants, the Court
dismisses plaintiffs' claims against John Doe Nos. 1–5.

as well as the costs incurred by plaintiffs in this action, including reasonable attorneys' fees. Ishayev and Leykina deny plaintiffs' claims. Ishayev, in his answer, brings a counterclaim for libel, alleging damages to his reputation, employment opportunities, and future earning capability arising from plaintiffs' claims against him for copyright infringement. Ishayev seeks $3.5 million in damages on his counterclaim.

On September 21, 2012, defendants moved for summary judgment on all claims, and, on December 17, 2012, plaintiffs cross-moved for summary judgment on all claims. For the reasons that follow, (1) as to plaintiffs' claims, the Court denies plaintiffs' and Ishayev's motions for summary judgment, but grants Leykina's; and (2) as to Ishayev's libel counterclaim, the Court grants plaintiffs' motion for summary judgment, and denies Ishayev's. Those portions of plaintiffs' motion that are denied are without prejudice to plaintiffs' right to renew their motion, this time on an intelligible factual record that permits the Court to make an informed assessment of plaintiffs' claims of copyright infringement.

I.      **Background**[3]

A.      **Parties**

Plaintiffs are companies that publish a variety of works, including educational textbooks and accompanying instructors' solutions manuals. FAC ¶¶ 11, 15–16. Plaintiffs hold numerous

---

[3] The Court's account of the facts is derived from the parties' submissions in support of and opposition to the instant motions. Plaintiffs have submitted: the first amended complaint ("FAC") (Dkt. 23), a Rule 56.1 Statement ("Pl. 56.1") (Dkt. 53), a memorandum of law in support of plaintiffs' motion for summary judgment ("Pl. Br.") (Dkt. 54), reply memorandum of law ("Pl. Reply Br.") (Dkt. 70), and declarations from LaShonda Morris ("Morris Decl.") (Dkt. 55), Patrick Murphy ("Murphy Decl.") (Dkt. 56), Jessica Stitt ("Stitt Decl.") (Dkt. 57), Bonnie Beacher ("Beacher Decl.") (Dkt. 58), Jennifer Siewert ("Siewert Decl.") (Dkt. 59), and Laura Scileppi ("Scileppi Decl.") (Dkt. 60), with accompanying exhibits. Defendants submitted an Answer and Counterclaim (Dkt. 40), a Rule 56.1 Statement ("Def. 56.1") (Dkt. 49), a memorandum of law in opposition to the plaintiffs' motion ("Def. Br.") (Dkt. 67), and declarations from Leykina (Dkt. 68) and Ishayev (Dkt. 69) in support of their own motion for summary judgment.

copyrights.  They earn a substantial portion of their revenue from the publication of copyrighted works.  The college textbooks that plaintiffs publish are chosen by college professors in part because of the quality of supplemental materials like instructors' solutions manuals.  Plaintiffs earn significant revenue from the sale of such textbooks and solutions manuals.  *Id.* ¶¶ 14–15.

Defendants Ishayev and Leykina are residents of Brooklyn, New York.  FAC ¶¶ 8–9. The two have known each other since high school and have been in a romantic relationship for more than five years.  *See* Scileppi Decl. Ex. X ("Ishayev Dep."), at 22.  It is undisputed that defendants did not have permission from plaintiffs to reproduce or sell the allegedly infringed works.  FAC ¶ 21.

### B.    Relevant Events

As of fall 2010, websites existed that offered for sale unauthorized copies of the plaintiffs' instructors' solutions manuals.  This lawsuit arises from a series of transactions conducted by Jennifer Siewert, a paralegal at plaintiffs' counsel, Dunnegan and Scileppi LLC ("Dunnegan"), in which she sought to purchase those manuals from email addresses and websites allegedly affiliated with "Lazar Ishayev."  Siewert Decl. ¶ 1.  As described below, Siewert succeeded in purchasing copies of instructors' solutions manuals corresponding to six textbooks for which plaintiffs hold copyrights.  Pl. 56.1 ¶¶ 8–14.[4]

---

[4] The copyrights at issue here include: Pearson's copyright for the textbook Auditing and Assurance Services by Arens, 13th Edition, *see* Morris Decl. ¶¶ 3, 6; *id.* Ex. A; Wiley's copyrights for the textbooks Intermediate Accounting by Kieso, 13th Edition, and Financial Accounting by Weygandt, 7th Edition, *see* Murphy Decl. ¶¶ 3, 6–7; *id.* Ex. B; Cengage's copyright for the textbook Financial Management: Theory & Practice by Brigham, 12th Edition, *see* Stitt Decl. ¶¶ 3, 7; *id.* Ex. C.  and McGraw-Hill's copyrights for the textbooks Principles of Corporate Finance by Brealey, 7th Edition, and Advanced Financial Accounting, by Baker, 8th Edition, *see* Beacher Decl. ¶¶ 3, 6–7 ; *id.* Ex. D.  Each plaintiff has registered the above copyrights with the United States Copyright Office.  *See* Morris Decl. ¶ 3; *id.* Ex. A, D; Murphy Decl. ¶ 3; *id.* Ex. B; Stitt Decl. ¶ 3; *id.* Ex. C; Beacher Decl. ¶¶ 3, 6–7; *id.* Ex. D.

Plaintiffs describe the content of their instructors' solutions manuals sparingly.  They

aver that these manuals "contain the answers to the problems in the textbooks."  *Id.* ¶ 6; *see*

Morris Decl. ¶ 4; Murphy Decl. ¶ 4; Stitt Decl. ¶ 5; Beacher Decl. ¶ 4.  Plaintiffs have supplied

the Court with only a one-page excerpt from each instructors' solutions manual allegedly sold by

Ishayev.  Further, the excerpts supplied by plaintiffs have been redacted so as to lack any content

other than the chapter number and/or chapter title.[5]  The record on summary judgment also does

not reflect whether the chapter titles that appear in the redacted excerpts of the instructors'

solutions manuals are identical to corresponding chapter titles from the copyrighted textbooks.

Around September 21, 2010, Siewert contacted a "Lazar Ishayev" at lazarfb@gmail.com,

at the direction of Laura Scileppi and Samantha Morrissey, attorneys at Dunnegan.  Siewert

Decl. ¶ 2.[6]  At that time, Siewert purchased the manual for Intermediate Accounting from

Ishayev via email, utilizing the online payment service PayPal, Inc. ("PayPal") to send money to

a recipient listed on the receipt as Lazar Ishayev.  *Id.* ¶¶ 2–3; *id.* Ex. E.  On September 22, 2010,

Siewert received an email from Lazar Ishayev at lazarfb@gmail.com attaching a zip file

---

[5] The excerpt from the Intermediate Accounting manual provided by plaintiffs includes only the chapter number and the copyright information.  *See* Siewert Decl. Ex. G.  The excerpt from the Financial Management manual provided by plaintiffs includes only the chapter number and chapter name: "An Overview of Financial Management and The Financial Environment."  *See id.* Ex. K.  The excerpt from the Principles of Corporate Finance manual provided by plaintiffs includes only the chapter number and chapter name: "How to Calculate Present Value."  *See id.* Ex. O.  The excerpt of the Auditing and Assurance Services manual provided by plaintiffs includes only the chapter number and chapter name: "The Demand for Audit and Other Assurance Services."  *See id.*  The excerpt from the Financial Accounting manual provided by plaintiffs includes only the chapter number, chapter name, and a table title: "Accounting in Action" and "Assignment Classification table" respectively.  *See id.*  The excerpt of the Advanced Financial Accounting manual provided by plaintiffs includes only the chapter number and chapter name: "Intercorporate Acquisitions and Investments in Other Entities."  *See id.*

[6] The record does not reflect how Scileppi, Morrissey, or Siewert discovered the lazarfb@gmail.com email address with respect to the first listed transaction.

containing the manual for <u>Intermediate Accounting</u>, which Siewert then downloaded.  *Id.* ¶¶ 4–5; *id.* Ex. E, G.

Around March 9, 2011, Siewert, at Morrissey's direction, purchased the manual for <u>Financial Management: Theory & Practice</u> from the website solutionsmanuals-testbanks.blogspot.com.  Siewert Decl. ¶ 6.  Siewert paid "Solutions Direct" for this manual via Google Checkout, another online payment service, *id.* at ¶ 7; *id.* Ex. H, received a confirmation page from solutionmanuals-testbanks.blogspot.com, *id.* ¶ 8; *id.* Ex. I, and then received an email from "solutions4less" at solutions4less@optimum.net attaching a zip file containing the <u>Financial Management</u> manual, *id.* ¶ 9; *id.* Ex. J.  Siewert then, again, downloaded the manual herself.  *Id.* ¶ 10; *id.* Ex. K.

Around June 30, 2011, Siewert, again at Morrissey's direction, purchased the manual for <u>Corporate Finance</u> from the website solutionsmanuals-testbanks.blogspot.com.  Siewert Decl. ¶ 11.  She paid "Solutions Direct" for this manual via Google Checkout, *id.* at ¶ 12; *id.* Ex. L, received a confirmation page from solutionmanuals-testbanks.blogspot.com, *id.* ¶ 13; *id.* Ex. M, and then received an email from "solutions4less" at solutions4less@optimum.net attaching a zip file containing the <u>Corporate Finance</u> manual, *id.* ¶ 14; *id.* Ex. N.  She then downloaded the manual herself.  *Id.* ¶ 15; *id.* Ex. O.

On October 13, 2011, Siewert received an unsolicited email from "TextbookAnswers" at textbookanwer@gmail.com directing her to a new website—solutionmanuals-testbank.com—for future purchases.  On October 27, 2011, Morrissey directed Siewert, using that new website, to purchase manuals for the <u>Auditing & Assurance Services</u>, <u>Financial Accounting</u>, and <u>Advanced Financial Accounting</u> textbooks.  *Id.* ¶ 18.  That same day, Siewert received an email from textbookanswer@gmail.com confirming her purchase and instructing her to send payment via

PayPal.  *Id.* ¶ 20.  Siewert complied; her receipt listed, as the payment recipient, "Yelena

Leykina" at solutions4all@optimum.net.  *Id.* ¶ 21; *id.* Ex. S.  Also on October 27, 2013, Siewert

received another email from textbookanswer@gmail.com containing three separate hyperlinks to

a website called filesonic.com.  *Id.* ¶ 22; *id.* Ex. T.  Siewert downloaded the three manuals from

that website herself.  *Id.* ¶ 23; *id.* Ex. U.  The parties dispute, and the record does not

conclusively establish, whether Ishayev and/or Leykina were responsible for uploading the files

containing allegedly infringing material stored on filesonic.com.  *See* Pl. Reply Br. 4–5; Def. Br.

10.

### C.     Procedural History

On July 7, 2011, plaintiffs filed a complaint asserting claims of willful copyright

infringement against defendants.  Dkt 1.  On May 4, 2012, defendants filed an answer that

included a counterclaim for damages arising from, as Ishayev characterized it, plaintiffs' alleged

defamation of Ishayev's character.  Dkt. 12.  On May 7, 2012, the Court approved a case

management plan, which included a schedule for amended pleadings, deposition, and fact

discovery.  Dkt. 14.  On June 8, 2012, plaintiffs filed an amended complaint.  Dkt. 23.  On

September 21, 2012, defendants filed a motion for summary judgment on all claims, Dkt. 49;

and, on December 17, 2012, plaintiffs filed their own motion for summary judgment on all

claims, Dkt. 53.  On March 4, 2013, defendants submitted a memorandum in opposition to the

plaintiffs' motion.  Dkt. 67.  On March 20, 2013, plaintiffs submitted a reply.  Dkt. 70.

## II.     Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

6

light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, "we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In considering plaintiffs' motion, the Court is mindful that Ishayev and Leykina are *pro se* litigants whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted). However, this forgiving standard does not relieve the defendants of their "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

## III.   Discussion

Plaintiffs bring a claim for copyright infringement under 17 U.S.C. § 501. "To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "'The word copying is shorthand for the infringing of any of the copyright owner's five

7

exclusive rights'" enumerated in 17 U.S.C. § 106.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110,

117 (2d Cir. 2010) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.

2001)); *accord Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832(JGK)(KNF), 2010 WL

3744033, at *1 (S.D.N.Y. Sept. 27, 2010).  Three § 106 exclusive rights are relevant in this case:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

17 U.S.C. § 106.

It is undisputed that plaintiffs own a valid copyright for each of the six textbooks

implicated in this case.  *See supra* note 4.  The instructors' solutions manuals allegedly infringed

by Ishayev and Leykina here, however, are not themselves copyrighted; rather, they are

unregistered works, which plaintiffs contend are protected derivative works of the copyrighted

textbooks.  Therefore, a second two-step analysis is required to ascertain whether Ishayev's and

Leykina's actions constitute copyright infringement.  To resolve plaintiffs' motion for summary

judgment the Court must determine (1) whether the manuals are indeed derivative works

qualifying for copyright protection, and, if they are, (2) whether, based on the evidence adduced

at summary judgment, it is beyond genuine dispute that defendants have infringed one or more of

the plaintiffs' exclusive § 106 rights with respect to such unregistered derivative works.

**A.   Derivative Works**

The right "to prepare derivative works based upon the copyrighted work" is an exclusive

right guaranteed by the Copyright Act to the owner of any copyright.  17 U.S.C. § 106(2); *see*

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998).

Plaintiffs here claim that their unregistered instructors' solutions manuals are derivative works—

each being derivative of one of their six copyrighted college textbooks—and therefore are protected against infringement.

A "derivative work" is defined as

a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101. In order "for a work to qualify as a derivative work it must be independently copyrightable." *Woods v. Bourne Co.*, 60 F.3d 978, 990 (2d Cir. 1995). The work in question, "in order to qualify for protection as a derivative work . . . must, 'when analyzed as a whole, . . . display sufficient originality so as to amount to an original work of authorship.'" *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 210–11 (S.D.N.Y. 2009) (second omission in original) (quoting *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 674, 680 (2d Cir. 1998)). A derivative work may, however, be complementary to an original work. *Blanch v. Koons*, 467 F.3d 244, 252 n.4 (2d Cir. 2006). The test for determining whether a work is derivative, although requiring a "variation that is more than merely trivial," is "concededly a low threshold." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 782 (2d Cir. 1994).

Plaintiffs claim that their instructors' solutions manuals are important companion works to their copyrighted textbooks and thus are derivative works. The record evidence supplied by plaintiffs here as to the content of the instructors' solutions manuals and the extent to which it replicates portions of the copyrighted textbooks is woefully sparse, but the record reflects this much: that these manuals contain the answers to questions provided in plaintiffs' registered textbooks. Pl. Br. 12; *see* Morris Decl. ¶¶ 4–5; Murphy Decl. ¶¶ 4–5; Stitt Decl. ¶¶ 5–6; Beacher

Decl. ¶¶ 4–5.  Because those answers are "elaborations" of the copyrighted material present in the plaintiffs' textbooks, the Court finds that the new material presented in the instructors' manuals is sufficiently original to pass the low threshold required.  On that basis, the Court holds that the plaintiffs' instructors' manuals are derivative works.[7]

It is, however, a separate question whether the act of copying any aspect of an unregistered derivative work (the instructors' solutions' manuals) necessarily infringes the copyright associated with the underlying registered work (the textbooks).  There is a split of authority on this point.  To support their claim that this is so, plaintiffs rely on decisions from two courts in this District.  *See Vergara*, 2010 WL 3744033, at *3 ("'[G]iven that a derivative work by definition consists of matter that would be infringing if it had been derived from the pre-existing work without the copyright proprieter's consent[ ], it follows analytically that the owner

---

[7] Plaintiffs alternatively argue that the manuals are protected derivative works because they have "no independent economic value" and are functionally "meaningless" without the original work. *See* Pl. Br. 11 (citing *Pearson Educ., Inc. v. Nugroho*, No. 08 Civ. 8034 (DAB)(AJP), 2009 WL 3429610, at *5 (S.D.N.Y. Oct. 27, 2009), *report and recommendation adopted*, 2009 WL 4884098 (S.D.N.Y. Dec. 16, 2009); *Pavlica v. Behr*, No. 03 Civ. 9628 (DC), 2006 WL 1596763, at *3 (S.D.N.Y. June 12, 2006)).  Those factual propositions are not disputed:  The instructors' solutions manuals here have "no independent economic value" outside of their connection to the respective underlying textbook; and their sole purpose is to provide, and explain, the answers to questions contained in those copyrighted textbooks.  Pl. Br. 12; *see* Morris Decl. ¶¶ 4–5; Murphy Decl. ¶¶ 4–5; Stitt Decl. ¶¶ 5–6; Beacher Decl. ¶¶ 4–5.  However, plaintiffs' claim that the manuals are, on this basis, protected derivative works is not persuasive.  *Pavlica*, and the cases it cites, used the "no independent economic value" formulation in the course of determining the number of works for the purposes of calculating statutory damages under 17 U.S.C. § 504(c)(1), not whether a derivative work is protected.  2006 WL 1596763, at *2; *see, e.g.*, *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) ("The circuits that have defined 'work' [in 17 U.S.C. § 504(c)(1)] have held that separate copyrights are not distinct 'works' unless they can 'live their own copyright life.'  This test focuses on whether each expression has an independent economic value and is, in itself, viable." (citations omitted)).  And the Second Circuit has emphatically stated: "[t]his Court has never adopted the independent economic value test, and we decline to do so in this case." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 142 (2d Cir. 2010).  The Court therefore does not rely on this rationale to find the instructors' solutions manuals to be protected derivative works. *Accord Pearson Educ., Inc. v. Frances*, No. 11 Civ. 6081 (LTS)(JCF), 2013 WL 1360340, at *2 n.3 (S.D.N.Y. Apr. 3, 2013).

of a registered underlying work, in that capacity alone, should be able to maintain' a suit for

unauthorized reproduction of an unregistered derivative work." (second alteration in original)

(quoting 2–7 Nimmer on Copyright § 7.16(B)(5)(b))); *Pearson Educ., Inc. v. Nugroho*, No. 08

Civ. 8034 (DAB)(AJP), 2009 WL 3429610, at *3 (S.D.N.Y. Oct. 27, 2009), *report and

recommendation adopted*, 2009 WL 4884098 (S.D.N.Y. Dec. 16, 2009) ("[I]t is a copyright

infringement to make or sell a derivative work without a license from the owner of the copyright

on the work from which the derivative work is derived." (quoting *Bucklew v. Hawkins, Ash,

Baptie & Co.*, 329 F.3d 923, 930 (7th Cir. 2003) (Posner, J.))).

  The weight of authority, however, is to the contrary:  that an unregistered derivative work

is protected from infringement only to the extent to which that unregistered work has reproduced

protected material from the underlying registered work.  *See Pearson Educ., Inc. v. Frances*, No.

11 Civ. 6081(LTS)(JCF), 2013 WL 1360340, at *2 (S.D.N.Y. Apr. 3, 2013) (holding that

plaintiffs' claims of copyright infringement for the copying of unregistered derivative works—

instructors' solutions manuals—were only "viable to the extent that the [manuals] reproduced

protected material from the registered textbooks"); *Klauber Bros., Inc. v. Russell-Newman, Inc.*,

No. 11 Civ. 4985 (PGG), 2013 WL 1245456 at *5 (S.D.N.Y. Mar. 26, 2013) ("The owner of a

derivative work may maintain a copyright action against an alleged infringer, based on any

*infringement of the pre-existing work* from which the derivative work is derived." (emphasis

added)); *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 562 (S.D.N.Y. 2009) ("In

considering such a claim [of infringement of a derivative work], however, the Court must

compare the allegedly infringing work with the Registered Work, and not with the Unregistered

Manuscript."); *SimplexGrinnell*, 642 F. Supp. 2d at 213–14 (Lynch, J.) ("[U]nauthorized copying

of a derivative work infringes the derivative work itself only to the extent of the newly added

material; any infringement of the preexisting material infringes the pre-existing work, rather than the derivative work from which the pre-existing material may have actually been copied."); *Well-Made Toy*, 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002) ("It follows that where the preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any protected element contained in the registered preexisting work, but not as to any element original to the unregistered derivative work."), *aff'd*, 354 F.3d 112 (2d Cir. 2003), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *see also Montgomery v. Noga*, 168 F.3d 1282, 1292 (11th Cir. 1999) ("The exclusive right to prepare derivative works, specified separately in clause (2) of section 106, overlaps the exclusive right of reproduction [in section 106(1) ] to some extent. . . . [T]o constitute a violation of section 106(2), the infringing work must incorporate *a portion of* the copyrighted work in some form." (emphasis in original) (quoting H.R. Rep. No. 94-1476, at 62 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5675)); *Janel Russell Designs, Inc. v. Mendelson & Associates, Inc.*, 114 F. Supp. 2d 856, 864 (D. Minn. 2000) (collecting cases).

The Court finds this latter, majority approach more persuasive.  It fully protects the copyright holder's exclusive right under 17 U.S.C. § 106 to "prepare derivative works."  At the same time, it gives persons who create derivative works an incentive to register them.  It also avoids the problem, inherent in plaintiffs' approach, of giving unduly sweeping protection to the holder of the copyright in the original work:  Plaintiffs' approach would allow a copyright holder who licenses a third party to create derivative works to sue for infringement of not only the licensed material, but also—if the third-party has not registered his derivative work—the new, original material created by the third party.  But that outcome contravenes the purposes of the Copyright Act.  Instead, the holder of the underlying copyright may properly sue only on the

protected material incorporated into the derivative work.  *Accord* 2-7 Nimmer on Copyright § 7.16(B)(5)(b) ("So long as the infringement relates to material common to both the underlying and [unregistered] derivative work, the copyright owner can simply allege violation of the former.").

Measured against that standard, to establish infringement based on the instructors' solution manuals, plaintiffs would have to show that materials copied from that manual were common to the underlying registered textbooks.  For reasons that are unclear, on their motion for summary judgment, plaintiffs did not bring such evidence before the Court.  Instead, plaintiffs, curiously, presented the Court with only a single, heavily-redacted page from each allegedly infringed instructors' solutions manual.  *See supra* note 5.  Nor did plaintiffs otherwise adduce evidence of content common to the textbooks and the solutions manuals.  Because plaintiffs have thus failed to show "that the amount that was copied is 'more than de minimis,'" they have not met their burden for summary judgment.  *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (citing *Castle Rock Entm't*, 150 F.3d at 137–38; *see also SimplexGrinnell LP*, 642 F. Supp. 2d at 215 ("Nor can it be ascertained on the existing record whether, to the extent there is any overlap in protected components, it would be more than de minimis, as would be required for the copying of an unregistered version to infringe upon the registered version.").

Defendants, however, have also fallen short of establishing that summary judgment in their favor is merited on this point.  They have not presented evidence that the instructors' solutions manuals in question that they allegedly copied *lacked* more than *de minimis* material from the underlying registered textbooks.  Until unredacted copies of the instructors' solutions manuals in question have been put before the Court and the parties have addressed the extent to

which there are common contents between those and the registered textbooks, the Court will be unable to determine whether sufficient copying has taken place to support a claim.

Accordingly, the Court denies both plaintiffs' and defendants' motion for summary judgment with respect to Ishayev for all claims. For separate reasons, however, the Court grants defendants' motion for summary judgment with respect to Leykina, as explained further *infra*, in Section III.C.

### B.    Infringement by Hyperlink

Plaintiffs' motion for summary judgment, as to three of the instructors' solutions manuals, cannot be granted for a separate reason. Those manuals[8] were accessed by Siewert through hyperlinks emailed to her by Ishayev, as opposed to Ishayev's having attached digitally copies of those manuals to the emails he sent to Siewert. Such action, without more, is insufficient to establish an act of infringement. A question of fact remains as to whether Ishayev engaged in infringement by other means, *i.e.*, by uploading the infringing material to filesonic.com.[9]

---

[8] These are:  <u>Auditing & Assurance Services</u>, <u>Financial Accounting</u>, and <u>Advanced Financial Accounting</u>.

[9] Plaintiffs' claims would have succeeded, however, with respect to the three solutions manuals—<u>Intermediate Accounting</u>, <u>Financial Management: Theory & Practice</u>, and <u>Corporate Finance</u>—that Ishayev sent via three emails directly to Siewert, each with an attached zip file containing the text of the specific manual requested, which is undisputed by defendants.  *See* Def. Br. 13.  Once received by Siewert, the attached zip files provided her with immediate access to the text of the manuals.  Consistent with a uniform body of case law the Court holds that by emailing zip files containing digital copies of the above mentioned manuals, without plaintiffs' consent, Ishayev infringed their exclusive rights under § 106.  *See, e.g.*, *Vergara*, 2010 WL 3744033, at *3 (holding that the unlicensed transfer of electronic versions of derivative works over the Internet infringed "plaintiffs' exclusive right to prepare derivative works to their registered textbooks"); *see also Capitol Records, LLC v. ReDigi Inc.*, No. 12 Civ. 95 (RJS), 2013 WL 1286134, at *4 (S.D.N.Y. Mar. 30, 2013) ("Courts have consistently held that the unauthorized duplication of digital music files over the Internet infringes a copyright owner's exclusive right to reproduce."); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 172

To elaborate:  Plaintiffs allege that Ishayev and Leykina infringed plaintiffs' copyrights "through their sales of unauthorized copies of plaintiffs' instructors' solutions manuals" over the internet.  FAC ¶ 1.  It is undisputed that, with respect to three manuals, Ishayev, without consent from any plaintiff, sent emails to Siewert containing hyperlinks to a website called filesonic.com from which Siewert could and did directly download the specific requested manuals.[10]  Def. Br. 9–10.  As to those three works, however, Ishayev attests that he was not responsible for uploading the infringing material to filesonic.com.  *Id.* at 10; Ishayev Dep. 44.

As a matter of law, sending an email containing a hyperlink to a site facilitating the sale of a copyrighted work does not itself constitute copyright infringement.  A hyperlink (or HTML instructions directing an internet user to a particular website) is the digital equivalent of giving the recipient driving directions to another website on the Internet.  A hyperlink does not itself contain any substantive content; in that important sense, a hyperlink differs from a zip file. Because hyperlinks do not themselves contain the copyrighted or protected derivative works, forwarding them does not infringe on any of a copyright owner's five exclusive rights under § 106.  *See MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012) ("Because the actual transfer of a file between computers must occur, merely providing a 'link' to a site containing copyrighted material does not constitute direct

---

(D. Mass. 2008) (holding that transmitting electronic files over the internet constitutes "distribution" for the purposes of 17 U.S.C. § 106(3));  *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 968 (N.D. Tex. 2006) (collecting cases).

[10] During his deposition, Ishayev equivocated as to whether he was paid in exchange for providing the zip files and hyperlinks identified above.  *See* Ishayev Dep. 42–44.  However, the Court finds that no reasonable juror could fail to find that Ishayev was in fact compensated for his actions, given (1) the PayPal receipts provided in Exhibit E of the Siewert Declaration, (2) Ishayev's admission that he operated a PayPal account associated with lazarfb@gmail.com and with his bank accounts at Astoria Federal Savings Bank and TD Bank, *see* Ishayev Dep. 83, 94; Scileppi Decl. Ex. AC, and (3) Ishayev's admission that he used that PayPal account with respect to transactions involving instructors' solutions manuals, *see* Ishayev Dep. 44, 83.

infringement of a holder's distribution right."), *adhered to on reconsideration*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007) (holding that providing HTML instructions that direct a user to a website housing copyrighted images "does not constitute direct infringement of the copyright owner's display rights" because "providing HTML instructions is not equivalent to showing a copy"); *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 CIV. 4660(SHS), 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (holding, on motion for summary judgment, that supplying hyperlinks to unauthorized, infringing files is, alone, insufficient to establish infringement).[11]

The analysis in *MyPlayCity* is apposite here.  There, MyPlayCity ("MPC"), an internet content provider that created Internet-based video games, alleged copyright infringement by Conduit Ltd. ("Conduit"), an Internet company that sold content producers the "right to use its online platform to create and distribute customized 'toolbars.'"  2012 WL 1107648, at *1–2. MPC argued that Conduit had committed copyright infringement when, after the termination of agreements between the two parties, it enabled Conduit users to access MPC's copyrighted games via a previously-created toolbar.  *Id.*  The copyrighted material in question in *MyPlayCity*, however, "resided on MPC's servers" and not on Conduit's, and the toolbars provided by Conduit to its users "did not themselves contain copies of MPC's copyrighted software."  *Id.* at *13.  Because the toolbars provided by Conduit merely directed users to software that existed on another company's server, the district court held, Conduit had not actually disseminated copies

---

[11] To be sure, "[a]lthough hyperlinking per se does not constitute direct copyright infringement because there is no copying . . . in some instances there may be a tenable claim of contributory infringement or vicarious liability."  *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 (N.D. Cal. 2004).  In this case, however, plaintiffs did not bring claims in their FAC for contributory infringement.  Nor, for that matter, did they articulate such a theory in their briefs in support of summary judgment.

of MPC's copyrighted games, and was not liable for "infringing on MPC's distribution rights." *Id.*

So, too, here:  The hyperlink that Ishayev sent to Siewert directed her to filesonic.com, a file sharing website on which she could access electronic copies of three of plaintiffs' manuals, but, like the toolbars in *MyPlayCity*, the link was not itself a digital copy of any of the protected materials, and did not contain a copy of any of those materials.

To be sure, if Ishayev had *himself* uploaded the electronic copies of the manual onto the filesonic.com website, he would then be liable for copyright infringement, assuming plaintiffs had met their burden in showing that more than a *de minimis* amount of copyrighted material was present in the instructors' manuals.  And, plaintiffs contend that he is liable on that basis.  They assert that "[a] reasonable juror could not conclude that defendants did not reproduce the publishers' instructors' solutions manuals before distributing them by hyperlink to Ms. Siewert." Pl. Reply Br. 4.  But, plaintiffs' evidence that *Ishayev* reproduced or participated in the reproduction of their instructors' solutions manuals before furnishing Siewert with the hyperlinks in fact is not conclusive.  Plaintiffs argue that because (1) filesonic.com was a file sharing website and not another seller's website, and (2) an email from one or both of the defendants to Siewert stated that the links were only available for 48 hours, *see* Pl. Reply Br. 4; Siewert Decl. Ex. T, it follows that Ishayev is responsible for reproducing their materials (*i.e.*, copying them to the file-sharing website).  Plaintiffs also point to circumstantial evidence that Ishayev uploaded these three instructors solutions' manuals: specifically Ishayev's demonstrated access, and copying of, plaintiffs' other derivative works, and the fact that he sold those other derivative works over the internet.  In the Court's assessment, that evidence would supply a sufficient basis on which a reasonable juror could conclude that Ishayev participated in uploading these three

instructors' solutions manuals to filesonic.com.  But, particularly in the face of Ishayev's denial

that he did so,[12] this evidence leaves a material issue of fact as to Ishayev's role in uploading

these three manuals.  Viewing the evidence in totality, a reasonable juror could, but would not be

required to, find that Ishayev uploaded the infringing material to the website.

     For this reason, even if there had been sufficient evidence to demonstrate that materials

common to the registered textbooks and the instructors' training materials had been copied, the

present record would prevent the Court from granting summary judgment in plaintiffs' favor as

to <u>Auditing & Assurance Services</u>, <u>Financial Accounting</u>, and <u>Advanced Financial Accounting</u>.

### C.   Leykina's Liability

     The Court turns next to considering the evidence of Leykina's liability for copyright

infringement.  This analysis is different as between the manuals distributed via zip file, and those

distributed via hyperlink.  The Court addresses these categories in turn.

     As to the first category (*i.e.*, as to the <u>Intermediate Accounting</u>, <u>Financial Management:</u>

<u>Theory & Practice</u>, and <u>Corporate Finance</u> manuals), plaintiffs have not come forward with any

affirmative evidence to support their allegation that Leykina worked together with Ishayev to

carry out the three zip file transactions.  Leykina, for her part, denies involvement in any of

Ishayev's allegedly infringing activities:  "I did not participate in any activity that Plaintiffs'

allege. . . ."  Dkt. 68 ("Leykina Decl.").  In the absence of such evidence, Leykina is not liable

---

[12] Ishayev testified that "I said that I may, in exchange for compensation, have provided
information, in digital or instructions how to retrieve any such item from a source that I do not
control."  Ishayev Dep. 44.  Although not pellucid, the Court construes this statement as denying
the act of uploading.  In his brief, Ishayev flatly denied uploading the materials, stating that he
"did not have actual knowledge that the links he sent house actual copyrights material . . . nor is
he the one who uploaded such infringing material."  Def. Br. 10.  Ishayev later attested that
everything in his brief was true.  *See* Dkt. 69 ("Ishayev Decl.").

for infringement of the three above-mentioned manuals.  Her motion for summary judgment as to the manuals distributed via zip file must, therefore, be granted.

In contrast, plaintiffs do adduce evidence supporting their claim of some degree of involvement by Leykina with respect to the transactions involving hyperlinks.  They point to (1) Ishayev's use of Leykina's PayPal account, (2) the fact that Leykina's PayPal account took in approximately $24,108.72, and (3) that Leykina's bank account associated with her PayPal account "received numerous deposits from PayPal."  On that basis, plaintiffs assert, "[a] reasonable juror could not conclude that Ms. Leykina received, and kept, approximately $24,108.72, without any participation in sales" of copyrighted material.  Pl. Reply Br. 2.

But this evidence falls short of being sufficient to establish Leykina's liability for copyright infringement, for two reasons.  First, at most, it establishes Leykina's receipt and retention of sales proceeds of copyrighted material.  It is not sufficient to establish her participation in the process of sending hyperlinks to customers.  The sole evidence as to that issue, in fact—Leykina's statements—is to the contrary.[13]  In her deposition, and in defendants' brief on summary judgment, Leykina denied her involvement in any such activities.[14]  Even as to her PayPal account, Leykina contends that she allowed Ishayev to use that account, and that she was unaware of specifically how he used it.  *See* Def. Br. 2–3; Leykina Dep. 49, 53.

---

[13] For this reason, plaintiffs' claim that Leykina has not come forward with "any evidence demonstrating that Leykina was not involved in the sale of instructors' solutions manuals," Pl. Reply Br. 2, is untrue.  Leykina's sworn denial is such evidence.

[14] *Pro se* opposition papers can be treated as supplementary factual declarations if not inconsistent with the depositions and declarations on record.  *See Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *1 (S.D.N.Y. Dec. 18, 2012) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally [when evaluating a motion to dismiss], it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition papers, so long as the allegations are consistent with the complaint.").  *Cf. Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to the allegations in the complaint).

Second, as noted, the transactions involving the sending of hyperlinks do not themselves constitute infringement, and these are the only transactions in which Leykina's PayPal account was utilized.  As to Ishayev, his distribution via zip file of various other manuals created by plaintiffs was a basis on which a reasonable juror could infer that he had uploaded the infringing materials to filesonic.com; therefore, the claims of infringement as to him with regard to the materials accessible by hyperlink survived.  The same cannot be said of Leykina.  Unlike in the case of Ishayev, there is no evidence on the summary judgment record that Leykina ever copied plaintiffs' other three instructors' manuals.  There is, therefore, no non-speculative basis on which a juror could infer that she had participated in uploading the instructors' solutions manuals to filesonic.com.

Defendants' motion for summary judgment with respect to Leykina on the three remaining copyright claims is, therefore, granted.

### D.      Injunctive Relief

Plaintiffs also seek an injunction against defendants.  The Copyright Act provides that courts "may" grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  An injunction, however, is not mandatory and does not automatically follow a determination that a copyright has been infringed.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).  "A copyright plaintiff seeking a permanent injunction still must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief."  *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 551–52 (S.D.N.Y. 2008).  A plaintiff must demonstrate:

> (1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

> is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*

With the Court having denied plaintiffs' motion for summary judgment, however, it is premature to consider plaintiffs' bid for an injunction against Ishayev.[15]  As noted, the Court will permit plaintiffs to file a new motion for summary judgment.  Should such a motion be made, the Court expects plaintiffs to be more attentive to the burdens presented by such a motion, and this time to present the copyrighted textbooks and the instructors' solutions manuals in non-redacted form sufficient to enable the Court to determine whether or not there has been more than *de minimis* copying.  Upon such a renewed motion, it is possible that summary judgment may be granted to plaintiffs against Ishayev.  In the event of such an outcome, plaintiffs would then be at liberty to seek appropriate injunctive relief.

### E.    Ishayev's Counterclaim for Libel

In his answer to the FAC, Ishayev brought a counterclaim against plaintiffs for defamation because they cast "aspersions on the Defendant's, character and reputation . . . as a result of the unsubstantiated allegations, which are public records."  Dkt. 40, at 2.  He seeks $3.5 million in damages.  *Id.* at 3.  The Court construes this as a claim of libel, because "[l]ibel is a method of defamation expressed in writing or print."  *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).  New York law requires a plaintiff to establish five elements to recover in libel:

> 1) a written defamatory statement of fact concerning the plaintiff;
> 2) publication to a third party;
> 3) fault (either negligence or actual malice depending on the status of the libeled party);

---

[15] With the Court having granted summary judgment in Leykina's favor, there is no basis for entry of an injunction against her.

4) falsity of the defamatory statement; and
5) special damages or per se actionability (defamatory on its face).

*Id.* (collecting cases).

The allegedly libelous statements of which Ishayev complains are plaintiffs' complaint and FAC, which include the "unsubstantiated allegations" of copyright infringement that Ishayev claims caused him irreparable harm.  However, "[i]n the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation."  *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995) (Chin, J.) (quoting *Grasso v. Mathew*, 564 N.Y.S.2d 576, 578 (3d Dep't 1991)), *aff'd*, 101 F.3d 1479 (2d Cir. 1996).  Pertinence is an extremely broad test:  "The absolute privilege embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability."  *Id.*

Here, Ishayev challenges plaintiffs' very allegations of infringement, which are central to their case.  Plaintiffs' pleadings and submissions cannot be the basis for a libel suit because they were indisputably pertinent to the litigation, and therefore privileged.  Furthermore, Ishayev has not met his burden to show that plaintiffs acted with negligence or malice, because the Court has found that a genuine issue of material fact exists with respect to most of plaintiffs' claims.  Because the Court concludes that plaintiffs brought their claims in good faith, their allegations cannot form the basis of a libel suit.  Thus, Ishayev has failed to establish at least two of the five elements of libel.  The Court accordingly dismisses Ishayev's counterclaim with prejudice.

## CONCLUSION

For the reasons stated above, the Court: (1) as to plaintiffs' claims against Ishayev, denies both plaintiffs' and defendants' motion for summary judgment; (2) as to plaintiffs' claims against Leykina, grants defendants' motion for summary judgment, and denies plaintiffs'

motion; (3) denies plaintiffs' request for injunctive relief; and (4) dismisses Ishayev's defamation counterclaim, with prejudice.  The Clerk of Court is directed to terminate the motions pending at docket numbers 49 and 53.

The Court further directs that the parties submit, by August 16, 2013, a joint letter setting out, in detail, their respective views as to how they wish to proceed in this litigation.  If plaintiffs intend to move again for summary judgment, this time on the basis of unredacted evidence that permits the Court to meaningfully assess plaintiffs' claims of copyright infringement, such a motion is due by August 30, 2013.


SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated:  August 1, 2013
        New York, New York