UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :

PEARSON EDUCATION, INC. et al.,         :
                                                 :

                           Plaintiffs,       :           11 Civ. 5052 (PAE)
                                                 :

                      -v-                   :          OPINION & ORDER
                                                   :

LAZAR ISHAYEV, *d/b/a* Solutions Direct *d/b/a*  :
Solutions4Less *d/b/a* TextbookAnswers *d/b/a*  :
SolutionManuals-Testbanks.com,          :
                                                 :

                           Defendant.     :
                                                 :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs Pearson Education, Inc. ("Pearson"), John Wiley & Sons, Inc. ("Wiley"),

Cengage Learning, Inc. ("Cengage"), and McGraw-Hill Global Education Holdings, LLC

("McGraw-Hill") (collectively, the "publishers") bring claims of copyright infringement against

*pro se* defendant Lazar Ishayev ("Ishayev"), whom they allege does business as "Solutions

Direct," "Solutions4Less," "TextbookAnswers," and/or "SolutionManuals-Testbanks.com."  The

publishers claim that Ishayev violated the Copyright Act, 17 U.S.C. §§ 501 *et seq.*, and willfully

infringed on their copyrights, by selling unauthorized versions of their instructors' solutions

manuals over the Internet.  The publishers seek damages, as well as a permanent injunction to

prevent Ishayev and/or his agents from selling the publishers' solutions manuals in the future.

      On November 5, 2013, the publishers submitted their second motion for partial summary

judgment with respect to the alleged infringement of 18 copyrights, Dkt. 87, and an

accompanying memorandum of law, Dkt. 88 ("Pl. Br.").  Ishayev's response was due November

26, 2013.  No response was filed.  For the reasons that follow, the publishers' motion is granted

in part and denied in part.

## I.      Background

### A.      The Court's Previous Summary Judgment Opinion

The publishers in this action are companies that publish a variety of works, including

educational textbooks and instructors' solutions manuals that accompany such textbooks.  *See*

Dkt. 23 (First Amended Complaint ("FAC")) ¶¶ 11, 15–16.  The publishers allege that Ishayev

sold copies of their instructors' solutions manuals over the Internet.  Most of these solutions

manuals are not independently covered by copyright.  The publishers assert, however, that the

unregistered solutions manuals derive copyright protection from the underlying textbooks, which

are registered.

The Court previously issued an Opinion in this case, denying the parties' cross-motions

for summary judgment on the publishers' copyright claims.[1]  *See Pearson Educ., Inc. v. Ishayev*,

No. 11 Civ. 5052 (PAE), 2013 WL 3948505 (S.D.N.Y. Aug. 1, 2013) ("*Pearson I*").  This denial

was based primarily on the fact that the publishers had failed to establish that their instructors'

solutions manuals were derivatively protected by their copyrights for the underlying textbooks.

The Court held that "an unregistered derivative work is protected from infringement only to the

extent to which that unregistered work has reproduced protected material from the underlying

registered work."  *Id.* at *6; *see also Pearson Educ., Inc. v. Frances*, No. 11 Civ. 6081 (LTS)

(JCF), 2013 WL 1360340, at *2 (S.D.N.Y. Apr. 3, 2013) (plaintiffs' claims of copyright

infringement for the copying of unregistered derivative works—*i.e.*, instructors' solutions

---

[1] Although not relevant to the present motion, the Court's previous opinion granted summary
judgment to one named defendant, Yelena Leykina ("Leykina")—thereby dismissing her from
the case—and to the publishers on Ishayev's counterclaim for libel.  *Id.*

manuals—were "only viable to the extent that the [manuals] reproduced protected material from the registered textbooks").  In other words, "to establish infringement based on the instructors' solution manuals," the publishers must show that the materials copied by Ishayev "were common to the underlying registered textbooks."  *Pearson I*, 2013 WL 3948505, at *7; *see also SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 215 (S.D.N.Y. 2009) (greater than *de minimis* copying of an unregistered, derivative work infringes upon the copyright of the registered work).  The record at the time of that decision was insufficient to determine whether the unregistered solutions manuals in fact reproduced protected material from the underlying registered textbooks.

The Court's earlier denial of the publishers' motion for summary judgment was without prejudice to their right to renew their motion, "this time on an intelligible factual record that permits the Court to make an informed assessment of plaintiffs' claims of copyright infringement."  *Pearson I*, 2013 WL 3948505, at *1.  Specifically, the previous record was insufficient for two reasons.  First, the publishers failed to "adduce evidence of content common to the textbooks and the solutions manual."  *Id.* at *7.  Without such evidence, the Court was unable to determine whether the solutions manuals derived copyright protection from the publishers' registered textbooks.  Second, the publishers only presented the Court with "a single, heavily-redacted page from each allegedly infringed instructors' solutions manual."  *Id.* Therefore, even if the Court had been able to find that the solutions manuals were covered by derivative copyright protection, there was insufficient evidence to conclude that Ishayev infringed on such copyrights by selling copies of the manuals.  Accordingly, the Court stated: "Until unredacted copies of the instructors' solutions manuals in question have been put before the Court and the parties have addressed the extent to which there are common contents between

3

those and the registered textbooks, the Court will be unable to determine whether sufficient copying has taken place to support a claim." *Id.*

The publishers have now accepted the Court's invitation to renew their motion for summary judgment on a more complete factual record.  As explained in greater detail below, the record now includes:  (1) the copyright certificates for 17 textbooks and one solutions manual owned by the publishers; (2) pages from the 17 textbooks and their associated, unregistered solutions manual; these materials are submitted to help the Court ascertain whether the solutions manuals reproduce protected material from the underlying registered textbooks; and (3) pages from the solutions manuals allegedly sold by Ishayev; these materials are submitted to help the Court ascertain whether there has been infringement.

### B.      The Publishers' Copyrights[2]

---

[2] Because the motion for partial summary judgment has not been opposed, the Court's account of the underlying facts of this case is drawn primarily from Pearson's submissions in support of this motion, including:  Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1") (Dkt. 94); the Declaration of LaShonda Morris in Support of Motion for Summary Judgment ("Morris Decl.") (Dkt. 89), and attached exhibits; the Declaration of Patrick Murphy in Support of Motion for Summary Judgment ("Murphy Decl.") (Dkt. 90), and attached exhibits; the Declaration of Bonnie Beacher in Support of Motion for Summary Judgment ("Beacher Decl.") (Dkt. 91), and attached exhibits; the Declaration of Jennifer Siewert in Support of Motion for Summary Judgment ("Siewert Decl.") (Dkt. 92), and attached exhibits; the Declaration of Laura Scileppi in Support of Motion for Summary Judgment ("Scileppi Decl.") (Dkt. 93), and attached exhibits; and the Declaration of Jessica Stitt in Support of Motion for Summary Judgment ("Stitt Decl.") (Dkt. 96), and attached exhibits.  Citations to Pearson's 56.1 Statement incorporate by reference the evidentiary materials cited therein.  Where facts stated in Pearson's 56.1 Statement are supported by testimonial or documentary evidence, and are not contradicted by admissible evidence, the Court has found such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id*. at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

On the present motion, the publishers move for summary judgment on their claims that Ishayev infringed 18 copyrights—four owned by Pearson, 12 owned by Wiley, one owned by Cengage, and one owned by McGraw-Hill.  The relevant copyrights are:

| Pearson Copyrights (4) | Author | Edition | Copyright Reg. Date | Copyright Reg. Number |
|---|---|---|---|---|
| (1) Corporate Finance | Berk | 2nd | March 16, 2010 | TX 7-147-969 |
| (2) Financial Accounting: A Business Process Approach | Reimers | 3rd | May 7, 2010 | TX 7-177-669 |
| (3) Fundamentals of Futures and Options Markets | Hull | 7th | March 23, 2010 | TX 7-161-496 |
| (4) Intro to Management Accounting | Horngren | 15th | May 24, 2010 | TX 7-188-121 |

| Wiley Copyrights (12) | Author | Edition | Copyright Reg. Date | Copyright Reg. Number |
|---|---|---|---|---|
| (1) Accounting Information Systems Controls and Processes | Turner | 1st | May 11, 2009 | TX 6-997-785 |
| (2) Accounting Principles | Weygandt | 8th | Dec. 20, 2007 | TX 6-954-905 |
| (3) Accounting Principles | Weygandt | 9th | April 16, 2010 | TX 7-192-054 |
| (4) Auditing & Assurance Services: Understanding the Integrated Audit | Hooks | 1st | Nov. 19, 2010 | TX 7-311-465 |
| (5) Business Statistics: For Contemporary Decision Making | Black | 5th | Oct. 3, 2007 | TX 6-860-598 |
| (6) Business Statistics:  For Contemporary Decision Making | Black | 6th | Jan. 7, 2011 | TX 7-309-917 |
| (7) Financial Accounting | Weygandt | 7th | Nov. 24, 2010 | TX 7-303-554 |
| (8) Financial Accounting: IFRS Ed. | Weygandt | 1st | Feb. 22, 2011 | TX 7-328-417 |
| (9) Financial Accounting in an Economic Context | Pratt | 7th | April 26, 2010 | TX 7-173-453 |
| (10) Financial Accounting: Tools for Business Decision Making | Kimmel | 5th | April 15, 2010 | TX 7-166-080 |
| (11) Intermediate Accounting | Kieso | 13th | Sept. 10, 2009 | TX 7-044-357 |
| (12) Managerial Accounting Tools for Business Decision Making | Weygandt | 5th | Nov. 19, 2010 | TX 7-311-538 |

| Centage Copyright (1) | Author | Edition | Copyright Reg. Date | Copyright Reg. Number |
|---|---|---|---|---|
| (1) Business Law, Text and Cases | Clarkson | 11th | May 12, 2008 | TX 6-863-239 |

| McGraw-Hill Copyright (1) | Author | Edition | Copyright Reg. Date | Copyright Reg. Number |
|---|---|---|---|---|
| (1) Solutions Manual to Accompany Principles of Corporate Finance | Brealey | 7th | March 11, 2003 | TX 5-698-593 |

Pl. 56.1 ¶¶ 1–4.

Because the publishers have provided the registration certificates for each of these works, *see* Morris Decl. Ex. A; Murphy Decl. Ex. F; Stitt Decl. Ex. S; Beacher Decl. Ex. U, the record establishes that the publishers own valid copyrights for 17 textbooks and one solutions manual. However, because the publishers' infringement claim turns entirely on Ishayev's sales of solutions manuals—not textbooks—the publishers must, as a threshold matter, establish that the 17 unregistered solutions manuals are protected derivative works of the registered textbooks.

The publishers have now provided sufficient evidence for the Court to determine that these unregistered solutions manuals are derivatively protected by the publishers' copyrights. With their motion, the publishers provided sworn Declarations—as well as substantial excerpts from both the textbooks and the solutions manuals—which together establish that the solutions manuals repeat "significant copyrighted content from the underlying registered textbook[s]." Pl. 56.1 ¶¶ 6–22. Based on the Court's close review of the excerpts provided, the solutions manuals repeat far more than *de minimis* content. *See SimplexGrinnell LP*, 642 F. Supp. 2d at 215. Accordingly, the Court finds the following:

### *As to the Pearson Copyrights*

(1) The solutions manual for <u>Corporate Finance</u> repeats significant copyrighted content from the registered textbook. *See* Morris Decl. Exs. B1, B2;

(2) The solutions manual for <u>Financial Accounting, A Business Process Approach</u> repeats significant copyrighted content from the registered textbook. *See id.* Exs. C1, C2;

(3) The solutions manual for <u>Fundamentals of Futures and Options Markets</u> repeats significant copyrighted content from the registered textbook. *See id.* Exs. D1, D2;

(4) The solutions manual for <u>Introduction to Management Accounting</u> repeats significant copyrighted content from the registered textbook. *See id.* Exs. E1, E2.

6

### As to the Wiley Copyrights

(1)  The solutions manual for <u>Accounting Information Systems Controls and Processes</u> repeats significant copyrighted content from the registered textbook.  *See* Murphy Decl. Exs. G1, G2;

(2)  The solutions manual for <u>Accounting Principles</u> (8th Edition) repeats significant copyrighted content from the registered textbook.  *See id.* Exs. H1, H2;

(3)  The solutions manual for <u>Accounting Principles</u> (9th Edition) repeats significant copyrighted content from the registered textbook.  *See id.* Exs. I1, I2;

(4)  The solutions manual for <u>Auditing and Assurance Services: Understanding the Integrated Audit</u> repeats significant copyrighted content from the registered textbook.  *See id.* Exs. J1, J2;

(5)  The solutions manual for <u>Business Statistics: For Contemporary Decision Making</u> (5th Edition) repeats significant copyrighted content from the registered textbook.  *See id.* Exs. K1, K2;

(6)  The solutions manual for <u>Business Statistics: For Contemporary Decision Making</u> (6th Edition) repeats significant copyrighted content from the registered textbook.  *See id.* Exs. L1, L2;

(7)  The solutions manual for <u>Financial Accounting</u> repeats significant copyrighted content from the registered textbook.  *See id.* Exs. M1, M2;

(8)  The solutions manual for <u>Financial Accounting: IFRS Edition</u> repeats significant copyrighted content from the registered textbook.  *See id.* Exs. N1, N2;

(9)  The solutions manual for <u>Financial Accounting in an Economic Context</u> repeats significant copyrighted content from the registered textbook.  *See id.* Exs. O1, O2;

(10) The solutions manual for <u>Financial Accounting: Tools for Business Decision Making</u> repeats significant copyrighted content from the registered textbook.  *See id.* Exs. P1, P2;

(11) The solutions manual for <u>Intermediate Accounting</u> repeats significant copyrighted content from the registered textbook.  *See id.* Exs. Q1, Q2;

(12) The solutions manual for <u>Managerial Accounting: Tools for Business Decision Making</u> repeats significant copyrighted content from the registered textbook.  *See id.* Exs. R1, R2.

*As to the Centage Copyright*

(1)  The solutions manual for <u>Business Law, Text and Cases</u> repeats copyrighted content from the registered textbook.  *See* Stitt Decl. Exs. T1, T2.

The publishers have therefore established that all 18 solutions manuals at issue in this motion are protected by copyright—either directly (as to McGraw-Hill's <u>Solutions Manual to Accompany Principles of Corporate Finance</u>), or derivatively (as to the other 17 manuals).  The remainder of the Opinion therefore addresses whether, based on the evidence in the record, the publishers are entitled to summary judgment on their claim that Ishayev infringed on these exclusive copyrights.

## II.  Applicable Legal Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  *See Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  This burden remains the same where, as here, the motion for summary judgment is unopposed.  *See id.* ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'") (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

"[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  The court must be satisfied that the citation to evidence in the record supports the assertion."  *Id.*  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir.

2008).  Only disputes over "facts that might affect the outcome of the suit under the governing

law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

248 (1986).  In determining whether there are genuine issues of material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d

Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).

## III.   Discussion

The publishers bring claims for copyright infringement under 17 U.S.C. § 501.  "To

establish infringement of copyright, 'two elements must be proven: (1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original.'" *Arista*

*Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural*

*Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  "The word copying is shorthand for the infringing of

any of the copyright owner's five exclusive rights" enumerated in 17 U.S.C. § 106.  *Id.* (citations

omitted).  Those rights include the rights to display, perform publicly, reproduce, distribute, and

prepare derivative works of the copyrighted material.  *See* 17 U.S.C. § 106.[3]

As explained *supra*, the publishers own a valid copyright for each of the 17 textbooks and

one solutions manual implicated by this motion.  The publishers have also established that the 17

solutions manuals that correspond to the 17 registered textbooks are derivative works that qualify

for copyright protection.  The first element—the ownership of a valid copyright—has therefore

been satisfied for the 18 works at issue.  The sole remaining question is whether the evidence in

---

[3] There is no dispute that Ishayev did not have permission to reproduce or sell any materials
covered by the publishers' copyrights.  *See Pearson I*, 2013 WL 3948505, at *1.

the record establishes beyond genuine dispute that Ishayev has infringed on one or more of the

plaintiffs' exclusive § 106 rights with respect to these 18 solutions manuals.

### A.      Copyright Infringement Claims

As summarized in the chart below, the publishers advance three theories of infringement.

First, they allege that Ishayev is directly liable for infringing on two copyrights because he sent

unauthorized copies of two manuals to Jennifer Siewert ("Siewert"), a paralegal for the

publishers' counsel, Dunnegan and Scileppi LLC.  Second, they bring claims of contributory

infringement on eight copyrights because Ishayev allegedly sent hyperlinks that enabled the

downloading of unauthorized copies of eight solutions manuals.  Third, they allege that Ishayev

is liable for infringing on eight more copyrights because he allegedly listed the titles of those

eight solutions manuals for sale on a website.

| Theory of Infringement | Publisher | Copyrighted Work | Copyright Reg. Number |
|---|---|---|---|
| Direct | Wiley | (11) Intermediate Accounting | TX 7-044-357 |
| Direct | McGraw-Hill | (1) Solutions Manual to Accompany Principles of Corporate Finance | TX 5-698-593 |
| Hyperlink | Wiley | (7) Financial Accounting | TX 7-303-554 |
| Hyperlink | Wiley | (2) Accounting Principles | TX 6-954-905 |
| Hyperlink | Wiley | (3) Accounting Principles | TX 7-192-054 |
| Hyperlink | Wiley | (4) Auditing & Assurance Services | TX 7-311-465 |
| Hyperlink | Wiley | (6) Business Statistics | TX 7-309-917 |
| Hyperlink | Wiley | (8) Financial Accounting: IFRS Edition | TX 7-328-417 |
| Hyperlink | Wiley | (10) Financial Accounting: Tools for Business Decision Making | TX 7-166-080 |
| Hyperlink | Centage | (1) Business Law, Text and Cases | TX 6-863-239 |
| Listing | Pearson | (1) Corporate Finance | TX 7-147-969 |
| Listing | Pearson | (2) Financial Accounting | TX 7-177-669 |
| Listing | Pearson | (3) Fundamentals of Futures and Options Markets | TX 7-161-496 |
| Listing | Pearson | (4) Introduction to Management Accounting | TX 7-188-121 |
| Listing | Wiley | (1) Accounting Info Systems Controls & Processes | TX 6-997-785 |
| Listing | Wiley | (5) Business Statistics | TX 6-860-598 |
| Listing | Wiley | (9) Financial Accounting in an Economic Context | TX 7-173-453 |
| Listing | Wiley | (12) Managerial Accounting for Business Decision Making | TX 7-311-538 |

The Court addresses each theory of infringement in turn.

### 1.      Direct Infringement

The publishers' case for summary judgment is strongest on their theory of direct infringement.  The primary proof of that theory are two transactions in which Siewert purchased solutions manuals from e-mail addresses and websites affiliated with Ishayev.  *See* Siewert Decl. Siewert's sworn Declaration explains each purchase.

### a.      Siewert Transaction One—<u>Intermediate Accounting</u>

On or about September 21, 2010, Siewert contacted a "Lazar Ishayev" at lazarfb@gmail.com in order to purchase the instructors' solution manual for <u>Intermediate Accounting</u>, Kieso (13th Edition) (TX 7-044-357), which was offered for sale.  *Id*. ¶ 2.  Siewert used the online payment service PayPal to send money, and the receipt she received had the name Lazar Ishayev on it, as well as the e-mail address, lazarfb@gmail.com.  *Id.* ¶¶ 2–3; *id.* Ex. V.  Siewert paid $30 for the solutions manual.  *Id.* Ex. V.  The next day, on September 22, 2010, Siewert received an email from Lazar Ishayev at lazarfb@gmail.com, which attached a zip file of the solutions manual for <u>Intermediate Accounting</u> (TX 7-044-357).  *Id.* ¶ 4; *id.* Ex. W.  Siewert then downloaded the file.  *Id.* ¶ 4, *id.* Ex. X.

The evidence in the record establishes conclusively that the file sent to Siewert was an unauthorized copy of the solutions manual for <u>Intermediate Accounting</u> (TX 7-044-357).  First, pages sampled from the manual purchased by Siewert, *see id.* Ex. X, are identical to sample pages from the manual provided by the publisher, Wiley, *see* Murphy Decl. Ex. Q2.  Second, Siebert sent the solutions manual she purchased to Patrick Murphy, the Senior Fraud & Enforcement Specialist at Wiley, whose responsibilities "involve the enforcement of its copyrights."  Murphy Decl. ¶ 1–2.  Murphy compared the copy of the solutions manual that

Siewert sent to him by e-mail, and confirmed that "it is virtually identical to Wiley's instructors' solutions manual for <u>Intermediate Accounting</u> (TX 7-044-357)." *Id.* ¶ 18.

Based on this record evidence, there is no dispute that *someone* sold an unauthorized copy of <u>Intermediate Accounting</u> (TX 7-044-357) to Siewert, and that this solutions manual was protected by Wiley's copyright.  Moreover, once Siewert downloaded the zip file of the solution manual, she had immediate access to the content of that manual.  As the Court previously held, "emailing zip files containing digital copies of [copyright-protected] manuals, without plaintiffs' consent" constitutes infringement under § 106.  *See Pearson I*, 2013 WL 3948505, at *7 n.9 (collecting cases).

There is also sufficient evidence in the record to establish conclusively that Ishayev was the party responsible for that infringement.  In his deposition, Ishayev admitted that he used the e-mail address <u>lazarfb@gmail.com</u>.  *See* Scileppi Decl. Ex. AK ("Ishayev Dep.") at 46:23–47.19. Ishayev also admits that he operated the PayPal account used in the transaction, which was linked to both his e-mail address, <u>lazarfb@gmail.com</u>, and to his accounts at Astoria Federal Savings Bank and TD Bank.  *See* Scileppi Decl. Ex. AP ("PayPal Account Info for Lazar Ishayev"); Ishayev Dep. at 83, 94.  That PayPal account, by Ishayev's own admission, was generally used with respect to transactions involving instructors' solutions manuals.  Ishayev Dep. 44, 83.  Finally, Siewert's payment for the solutions manual was sent to Ishayev's PayPal account, and the zip file containing the unauthorized copy of the solutions manual was sent from Ishayev's e-mail address.

Because there is no genuine dispute that Ishayev sold an unauthorized copy of <u>Intermediate Accounting</u> (TX 7-044-357) to Siewert, Wiley's motion for summary judgment on its claim of direct copyright infringement—as to that solutions manual—is granted.

**b.** **Siewert Transaction Two—<u>Principles of Corporate Finance</u>**

On or about June 30, 2011, Siewert purchased the <u>Solutions Manual to Accompany</u> <u>Principles of Corporate Finance</u>, Brealey (7th Edition) (TX 5-698-593), from the website <u>solutionsmanuals-testbanks.blogspot.com</u>.  Siewert Decl. ¶ 6.  Siewert paid $24.99 for the solutions manual via Google Checkout, and the receipt for her payment listed the recipient as "Solutions Direct."  *Id.* at ¶ 7; *id.* Ex. Y.  Siewert was then redirected to the website, <u>solutionmanuals-testbanks.blogspot.com</u>, where she received confirmation of her purchase.  *Id.* ¶ 8; *id.* Ex. Z.  That same day, Siewert received an email from "solutions4less" at <u>solutions4less@optimum.net</u>, attaching a zip file containing the <u>Solutions Manual to Accompany</u> <u>Principles of Corporate Finance</u> (TX 5-698-593).  *Id.* ¶ 9; *id.* Ex. AA.  Siewert then downloaded the manual.  *Id.* ¶ 10; *id.* Ex. AB2.

The evidence in the record establishes conclusively that the file sent to Siewert was an unauthorized copy of the <u>Solutions Manual to Accompany Principles of Corporate Finance</u> (TX 5-698-593).  First, pages sampled from the manual purchased by Siewert, *see id.* Ex. AB2, are identical to sample pages from that manual provided by the publisher, McGraw-Hill, *see id.* Ex. AB1.  Second, Siebert sent the solutions manual she purchased to Bonnie Beacher, the Senior Director of Contracts, Copyrights and Permissions at McGraw-Hill, whose responsibilities "involve the management of [McGraw-Hill's] copyrights."  Beacher Decl. ¶ 1–2.  Beacher compared the copy of the solutions manual that Siewert sent to her by e-mail, and confirmed that "it is virtually identical to McGraw-Hill's <u>Solutions Manual to Accompany Principles of</u> <u>Corporate Finance</u> (TX 5-698-593)."  *Id.* ¶ 5.  The only difference was that the infringing manual "does not contain the solutions to chapters 2, 33, and 34."  *Id.*

Based on this record evidence, there is no dispute that *someone* sold an unauthorized copy of the <u>Solutions Manual to Accompany Principles of Corporate Finance</u> (TX 5-698-593) to Siewert, and that this solutions manual was protected by a copyright owned by McGraw-Hill.

And again, there is also sufficient evidence in the record to establish conclusively that Ishayev was the party responsible for the infringement.  Ishayev has admitted on multiple occasions that he used the e-mail address, <u>solutions4less@optimum.net</u>, and the website, <u>solutionsmanuals-testbanks.blogspot.com</u>, to sell copies of solutions manuals.  *See* Ishayev Dep. at 80:4–81:11, 86:25.  Ishayev has also, in the course of this litigation, conceded that he sent the e-mail to Siewert that contained the zip file that Siewert used to download the unauthorized copy of this solution manual.  *See* Dkt. 67 ("Ishayev Brief") at 7, 10, 13; *see also* Dkt. 69 ("Ishayev Decl.") (attesting that everything in Ishayev's brief is true).

Because there is no genuine dispute that Ishayev sold an unauthorized copy of <u>Solutions Manual to Accompany Principles of Corporate Finance</u> (TX 5-698-593) to Siewert, McGraw-Hill's motion for summary judgment on its claim of direct copyright infringement—as to that solutions manual—is granted.

### 2.        Infringement by Hyperlink

The publishers also seek summary judgment against Ishayev on eight claims of copyright infringement for selling and sending "hyperlinks," which allowed customers to download unauthorized copies of the publishers' solutions manuals.  *See* Pl. Br. at 9–16.

### a.        Legal Principles

The Court previously held that sending hyperlinks, "without more, is insufficient to establish an act of infringement."  *Pearson I*, 2013 WL 3948505, at *7.

> As a matter of law, sending an email containing a hyperlink to a site facilitating the sale of a copyrighted work does not itself constitute copyright infringement.

> A hyperlink (or HTML instructions directing an internet user to a particular website) is the digital equivalent of giving the recipient driving directions to another website on the Internet. A hyperlink does not itself contain any substantive content; in that important sense, a hyperlink differs from a zip file. Because hyperlinks do not themselves contain the copyrighted or protected derivative works, forwarding them does not infringe on any of a copyright owner's five exclusive rights under § 106.

*Id.* at *8 (citations omitted); *see MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615 (CM), 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012) ("Because the actual transfer of a file between computers must occur, merely providing a 'link' to a site containing copyrighted material does not constitute direct infringement of a holder's distribution right."), *adhered to on reconsideration*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012); *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 Civ. 4660 (SHS), 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (supplying hyperlinks to unauthorized, infringing files is, alone, insufficient to establish infringement); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007) (providing HTML instructions that direct a user to a website housing copyrighted images "does not constitute direct infringement of the copyright owner's display rights" because "providing HTML instructions is not equivalent to showing a copy").

However, the Court's previous Opinion also noted that hyperlinking might lead to "a tenable claim of contributory infringement or vicarious liability." *Pearson I*, 2013 WL 3948505, at *8 n.11 (citing *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 (N.D. Cal. 2004)). The Court declined, at that time, to address secondary liability, because the publishers did not "bring claims in their FAC for contributory infringement," or "articulate such a theory in their briefs in support of summary judgment." *Id.* The publishers now, however, articulate such a theory. They assert that Ishayev is "secondarily liable for infringing eight of the publishers' copyrights by selling hyperlinks to download their solutions manuals." Pl. Br. at 9.

The Copyright Act does not expressly create liability for contributory infringement, but it is well established that "one who, with knowledge of the infringing activity, *induces,* causes *or materially contributes to the infringing conduct of another,* may be held liable as a contributory infringer." *Arista*, 604 F.3d at 117 (citations omitted) (emphases in original). "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know *or have reason to know*' of the direct infringement." *Id.* at 118 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001)) (emphases in original); *see also In re: Aimster Copyright Litigation,* 334 F.3d 643, 650 (7th Cir. 2003) ("[w]illful blindness is knowledge"), *cert. denied,* 540 U.S. 1107 (2004). Personal conduct that "encourages or assists the infringement" is sufficient to create contributory liability. *Arista*, 604 F.3d at 117 (citations omitted).

The publishers assert that Ishayev is liable for contributory infringement because he knowingly sold access to hyperlinks, which allowed other individuals to download eight of the publishers' copyright protected works from a website. If proven with competent evidence, such conduct would lead to liability for contributory copyright infringement—sending hyperlinks that permit others to download protected materials would plainly amount to conduct that encourages or assists in copyright infringement. *Arista*, 604 F.3d at 117. Ishayev may assert that he did not know that these materials were protected by copyright, but based on the publishers' registration certificates, he would at least have "reason to know" of their protected status. *Id.* at 118.

The evidence that Ishayev sent hyperlinks, however, differs among the eight claims—it is much stronger for one than it is for the other seven. The one claim concerns a hyperlink to a solutions manual that Jennifer Siewert purchased directly from Ishayev; it is therefore supported by Siewert's sworn declaration. The other seven claims, however, depend entirely on Ishayev's

16

and Leykina's PayPal records.  For the following reasons, the Court grants summary judgment to the publishers as to their Siewert claim, but denies it as to the other seven claims.

### b.    Siewert Transaction Three—<u>Financial Accounting</u>

On October 13, 2011, Siewert received an unsolicited email from "TextbookAnswers" at textbookanswer@gmail.com directing her to a new website—solutionmanuals-testbanks.com—for future purchases.  Siewert Decl. ¶ 11; *id.* Ex. AC.  Siewert attests that she visited the new website, noting the similar appearance—and nearly identical name—of the new website to the one where she previously purchased unauthorized copies of the publishers' solutions manuals, *i.e.*, solutionmanuals-testbanks.blogspot.com.  *Id.* ¶ 12; *see supra* Section III.A.1.  On October 27, 2011, Siewert used the new website to purchase the manual for <u>Financial Accounting</u>, Weygandt (7th Edition) (TX 7-303-554).  *Id.* ¶ 13.  That same day, Siewert received an email from "TextbookAnswers" at textbookanswer@gmail.com confirming her purchase and instructing her to send payment via PayPal.  *Id.* ¶ 15; *id.* Ex. AE.  Siewert complied; her PayPal receipt listed, as the payment recipient, "Yelena Leykina" at solutions4all@optimum.net.  *Id.* ¶ 16; *id.* Ex. AF.  Later that day, Siewert received another email from textbookanswer@gmail.com containing a hyperlink to download, <u>Financial Accounting</u> (TX 7-303-554).  *Id.* ¶ 17; *id.* Ex. AG.  Siewert followed the hyperlink, and downloaded the solutions manual from the website.  *Id.* ¶ 18, *id.* Ex. AH.

Additional evidence in the record conclusively establishes that that hyperlink allowed Siewert to download an unauthorized copy of the solutions manual for <u>Financial Accounting </u>(TX 7-303-554).  First, pages sampled from the manual purchased by Siewert, *see id.* Ex. AH, are identical to sample pages from that manual provided by the publisher, Wiley, *see* Murphy Decl. Ex. M2.  Second, Siebert once again sent the solutions manual she purchased to Patrick Murphy,

the Senior Fraud & Enforcement Specialist at Wiley.  Murphy compared the copy of the

solutions manual that Siewert sent to him by e-mail, and confirmed that "it is virtually identical

to Wiley's instructors' solutions manual for <u>Financial Accounting</u> by Weygandt, 7th Edition."

*Id.* ¶ 20.

Based on this record evidence, there is no dispute that *someone* sent Siewert a hyperlink

that allowed her to download an unauthorized copy of the solutions manual for <u>Financial

Accounting</u> (TX 7-303-554), or that the solutions manual was protected by Wiley's copyright.

There is also sufficient evidence to establish conclusively that Ishayev sent the hyperlink.

As discussed above, Ishayev has admitted using the website, <u>solutionsmanuals-

testbanks.blogspot.com</u>, to sell copies of solutions manuals; Siewert credibly testifies that the

website where she purchased <u>Financial Accounting</u>—*i.e.*, <u>solutionmanuals-testbanks.com</u>—

looked remarkably similar to <u>solutionsmanuals-testbanks.blogspot.com</u>.  Coupled with the fact

that the two websites had nearly identical names, and that <u>solutionmanuals-testbanks.com</u> was

able to send Siewert, a former customer of <u>solutionsmanuals-testbanks.blogspot.com</u>, an

unsolicited e-mail, compels the conclusion that both websites were controlled by the same

person—namely, Ishayev.

Moreover, Siewert's PayPal receipt for her purchase of <u>Financial Accounting</u> listed the

name "Yelena Leykina."  This is not a coincidence.  Ishayev admitted in his deposition that he

and Leykina have known each other for over ten years and have been involved in a romantic

relationship for over five years.  Ishayev Dep. 39:3–11.  Leykina, in turn, admitted that she

allowed Ishayev to use her PayPal account.  Scileppi Decl. Ex. AL ("Leykina Dep.") at 48:9–

49:5, 53:20–25.  There is thus no genuine dispute that Ishayev sold and sent the hyperlink that

permitted Siewert to download an unauthorized copy of the solutions manual for <u>Financial Accounting</u> (TX 7-303-554).

This evidence conclusively establishes that Ishayev engaged in conduct that encouraged or assisted the infringement of Wiley's copyright, *see Arista*, 604 F.3d at 117, and that he either knew or should have known of the infringement, *see id.* at 118.  Accordingly, the Court grants summary judgment on Wiley's contributory infringement claim as to its copyright for <u>Financial Accounting</u> (TX 7-303-554).

### c.    PayPal Record Transactions

The seven other titles for which the publishers assert contributory liability against Ishayev for sending hyperlinks rely solely on Ishayev and Leykina's PayPal account logs.  Because this evidence does not conclusively establish infringement of the publishers' copyrights, summary judgment on these seven claims is denied.

To be sure, the PayPal logs provide *some* circumstantial evidence of infringement.  *See* Scileppi Decl. Exs. AO, AR.  They appear to show that Ishayev and/or Leykina received payments for selling what appear to be seven of the publishers' solutions manuals.  *See id.* Ex. AR (Transaction Log 4:  Rows 295, 1057, 1097, 1164, 1302, 1380, 1473).  However, this conclusion is drawn solely from the "Notes" column in the PayPal log, which is where the titles of the solutions manuals allegedly sold appear to be listed.  *Id.*  Putting aside the fact that two of the seven transactions appear to have been cancelled, *see id.* (Transaction Log 4:  Rows 1057 & 1302), there is no evidence beyond these "Notes" to establish that these purported sales actually happened, or that the items allegedly sold were actually the solutions manuals protected by the publishers' copyright.  By contrast, Siewert, in all three of her transactions, received physical

files that she could compare to the publisher's solutions manuals in order to establish infringement conclusively.  The record contains no such evidence for these seven transactions.

This record is therefore inconclusive with respect to whether Ishayev sold or distributed the seven solutions manuals.  On summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson*, 680 F.3d at 236 (citation omitted).  A reasonable juror, viewing these PayPal logs, could—but would certainly not be required to—find that Ishayev sold hyperlinks that enabled other people to download these seven titles.  Because a material issue of disputed fact remains, the publishers' motion for summary judgment as to these seven titles is denied.

### 3.      Infringement by Listing

Finally, the publishers seek to establish that Ishayev infringed on eight more copyrights, based solely on their allegation that these eight solutions manuals were listed for sale on the website:  solutionsmanuals-testbanks.blogspot.com.  Pl. Br. at 16–18.  The publishers cite no legal authority for their claim that listing the titles of copyrighted materials for sale—with no evidence that anyone actually purchased or received such materials—constitutes copyright infringement.  Listing titles does not constitute the display, performance, reproduction, distribution, or preparation of derivative works of the work protected by copyright.  *See* 17 U.S.C. § 106.  It appears, instead, that the publishers rely entirely on the inference they urge that the listing of these titles *must* mean that Ishayev created copies of the listed titles.  *See* Pl. Br. at 17 ("It is reasonable to assume that a seller would have at least downloaded a title before advertising it for sale.  Therefore, for the instructors' solutions manuals listed on the website he used to sell instructors' solutions manuals, Ishayev either (i) saved a copy of these instructors'

solutions manuals on his computer, or (ii) contributed to the downloading of the instructors' solutions manuals by another individual by functioning as that person's partner and front man.").

The publishers are free to argue at trial that the jury should draw this inference—*i.e.*, that Ishayev's listing of these manuals for sale on the website means that he, or someone working with him, necessarily infringed on one of a copyright owner's five exclusive rights under § 106. But on summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (citation omitted). Because there is no evidence in the record that Ishayev—or anyone else—ever possessed, sold, or distributed copies of these eight solutions manuals, the publishers have failed to establish conclusively that Ishayev infringed upon these eight copyrights. Accordingly, the publishers' motion for summary judgment as to these eight manuals is denied.

### B.      Injunctive Relief

In addition to a judgment of liability for copyright infringement, the publishers seek to permanently enjoin Ishayev from further sales of their instructors' solutions manuals. The publishers state, in a conclusory manner, that they are "entitled, as a matter of course, to a permanent injunction restraining further acts of copyright infringement of the Copyrights." Pl. Br. at 18. That is not the law.

The Copyright Act provides that courts *may* grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). An injunction, however, is not mandatory and does not automatically follow a determination that a copyright has been infringed. *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 392–93 (2006). "A copyright plaintiff seeking a permanent injunction still must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief." *Warner Bros.*

*Entm't Inc. v. RDR Books,* 575 F. Supp. 2d 513, 551–52 (S.D.N.Y. 2008). A plaintiff must demonstrate:

> (1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* Here, the publishers have failed to meet their burden to establish the existence of these four factors. In fact, they fail to even address the factors in their brief. Accordingly, the publishers' request for a permanent injunction is denied, without prejudice to the publishers' right to seek at a later point to make the requisite showing.

## CONCLUSION

For the reasons stated above, the publishers' motion for summary judgment is granted as to three (3) claims of copyright infringement—direct infringement as to <u>Intermediate Accounting</u> (TX 7-044-357) and to the <u>Solutions Manual to Accompany Principles of Corporate Finance</u> (TX 5-698-593), and contributory infringement as to <u>Financial Accounting</u> (TX 7-303-554). The publishers' motion for summary judgment is denied as to the publishers' 15 other claims of copyright infringement and their request for a preliminary injunction. The Clerk of Court is directed to terminate the motion pending at docket number 87.

The parties are directed to meet and confer by April 4, 2014, and to submit to the Court by April 11, 2014, a joint letter setting out, in detail, their respective views on how, or whether, they wish to proceed forward in this litigation.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: March 24, 2014
     New York, New York

22